Quorum Sales v. Sharp 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00541-CV







Quorum Sales, Inc. and Muñoz, Hockema & Reed, Appellants



v.



John Sharp, Comptroller of Public Accounts of the State of Texas; 


Martha Whitehead, successor to Kay Bailey Hutchison, Treasurer of the 


State of Texas; and Dan Morales, Attorney General of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 92-01392, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING








 This case presents the issue of whether the purchaser of an aircraft must be a
certificated or licensed carrier in order for the aircraft sale to be exempt from sales tax. 
Appellants Quorum Sales, Inc. and the law firm of Muñoz, Hockema & Reed (collectively,
"Taxpayers") brought suit against John Sharp, as Comptroller of Public Accounts of the State
of Texas; Martha Whitehead, as Treasurer of the State of Texas; and Dan Morales, as
Attorney General of the State of Texas (collectively, the "Comptroller") seeking judicial
review of their claim that the sale of an aircraft was tax-exempt. Following cross-motions for
summary judgment, the trial court granted the Comptroller's motion and denied the
Taxpayers', holding that the sale was taxable. We will affirm the trial court's judgment. 

FACTUAL BACKGROUND

 On or about March 6, 1990, Quorum executed an agreement to sell a Mitsubishi
Diamond 1A aircraft to the law firm of Flores, Muñoz, Hockema & Reed, predecessor to
appellant Muñoz, Hockema & Reed (the "firm"). Flores, Muñoz, Hockema & Reed had
previously represented to Quorum's agent that the aircraft, when purchased, was to be used "for
charter under FAA Part 135." (1) This representation was intended to alert Quorum that the aircraft
sale was exempt from sales tax under the exemption set forth in section 151.328(a)(1) of the Tax
Code. (2) 

 On December 15, 1990, the firm entered into an operating agreement with AMR
Combs, Inc., a holder of an air carrier certificate issued by the Federal Aviation Administration
(the "FAA") and maintained in accordance with FAA Part 135. The operating agreement
provided, among other things, that AMR Combs would operate the aircraft under its certificate
for common carrier charter operations. 

 The Comptroller audited Quorum for the period of October 1, 1984 through June
30, 1990, and issued a notice of sales tax due. After a hearing on Quorum's request for a
redetermination, the Comptroller found a deficiency of $140,768.31, including interest, for sales
tax attributable to the aircraft sale. Taxpayers paid the assessed tax under protest and then filed
the instant lawsuit. See Tex. Tax Code Ann. § 112.051 (West 1992). The trial court granted the
Comptroller's motion for summary judgment and denied Taxpayers' motion, determining that
Taxpayers should not recover the tax paid under protest. Taxpayers appeal, asserting in two
points of error that the trial court erred in granting the Comptroller's motion for summary
judgment and in denying their motion. 



DISCUSSION


 Generally, sales tax is imposed at the time of sale on sales of tangible personal
property, including aircraft. See Tex. Tax Code Ann. §§ 151.051, .005(1) (West 1992). 
However, sales tax will not be imposed on aircraft sales that meet the criteria for the tax
exemptions set forth in Tax Code section 151.328. See Tex. Tax Code Ann. § 151.328 (West
1992 & Supp. 1995). Statutory exemptions from taxation are to be strictly construed. North
Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991). 
The exemption claimant bears the burden of clearly showing that it falls within the statutory
exemption. Id. All doubts are to be resolved in favor of the taxing authority and against the
claimant of the exemption. Bullock v. National Bancshares Corp., 584 S.W.2d 268, 272 (Tex.
1979), cert. denied, 444 U.S. 1016 (1980).

 The sales tax exemption applicable to the instant cause exempts aircraft sales to "a
person using the aircraft as a certificated or licensed carrier of persons or property." Tex. Tax
Code Ann. § 151.328(a)(1) (West Supp. 1995) (emphasis added). The meaning of the phrase
"certificated or licensed carrier" underlies the controversy; this statutory language has been in
effect unchanged since 1961. (3) While the Tax Code does not define "certificated or licensed
carrier," the Comptroller has twice adopted an administrative rule defining a similar phrase. 

 Before 1985, the Comptroller defined a "licensed and certificated carrier" as "the
aircraft . . . used to transport persons or property for hire in the regular course of business by a
person authorized by the appropriate Federal or State agency to be a common or contract carrier." 
See 7 Tex. Reg. 1177-78 (1982) (former 34 Tex. Admin. Code § 3.297(a)(1)) (emphasis added). 
Taxpayers contend that this definition is correct and, thus, that the exemption applies when the
purchaser's planned use of the aircraft is for common carrier operations. In other words, the
exemption applies to all aircraft sales in which the aircraft will be operated by an FAA common
carrier certificate holder regardless of whether the purchaser itself is a common carrier certificate
holder. 

 Since 1985, the Comptroller has defined a "licensed and certificated carrier" as "[a]
person authorized by the appropriate United States agency or by the appropriate state agency
within the United States to operate an aircraft, . . . as a common or contract carrier transporting
persons or property for hire in the regular course of business." 34 Tex. Admin. Code
§ 3.297(a)(1) (1995) (emphasis added). The Comptroller considers its new definition to be more
consistent with the Tax Code's language. (4) Tex. Comp. Pub. Acc'ts, Hearing No. 27,853 (1991),
1991 WL 246281, at 3. The Comptroller urges that this definition is applicable to the aircraft
sales transaction in the instant cause, maintaining that the exemption does not focus on the use of
the aircraft but on the aircraft purchaser. In other words, the exemption applies only to aircraft
sales to purchasers who are "certificated or licensed carrier[s]." 

 In construing a statute, regardless of whether the statute is facially ambiguous, we
may consider the administrative construction of the statute. Code Construction Act, Tex. Gov't
Code Ann. § 311.023(6) (West 1988); Southwest Airlines Co. v. Bullock, 784 S.W.2d 563, 568
(Tex. App.--Austin 1990, no writ). This Court may give weight to the construction placed upon
it by the agency charged with its administration as long as the construction is reasonable and does
not contradict the plain language of the statute. Tarrant Appraisal Dist. v. Moore, 845 S.W.2d
820, 823 (Tex. 1993); see also Tex. Tax Code Ann. § 111.002(a) (West 1992) ("The comptroller
may adopt rules that do not conflict with the laws of this state . . . ."). 

 Both Taxpayers and the Comptroller refer us to Southwest Airlines, 784 S.W.2d
at 568-69, in which we examined the Comptroller's pre-1985 definition of "licensed and
certificated carrier" and its congruity with former Tax Code section 151.330(c), which exempted
use tax on "[t]he use of tangible personal property . . . moved into this state for use as a licensed
and certificated carrier of persons or property." See Act of May 31, 1981, 67th Leg., R.S., ch.
389, § 1, 1981 Tex. Gen. Laws 1490, 1568 (Tex. Tax Code Ann. § 151.330(c), since repealed). 
Arguing that the "licensed and certificated carrier" language of section 151.330(c) did not refer
to an aircraft but instead to a business entity using an aircraft, Southwest Airlines asserted section
151.330(c) exempted from use tax "not only aircraft and other vehicles used by a carrier [a
business entity] to transport persons and property, but also . . . all personal property used by a
certificated carrier in its business of transporting persons and property." Southwest Airlines, 784
S.W.2d at 568. We disagreed, noting that contrary to Southwest Airlines's argument, section
151.330(c) made no reference to the entity using property subject to the use tax exemption. See
id. (noting statute did not refer to property used "by" a licensed and certificated carrier). Instead,
we concluded that the statute designated a category of personal property exempt from use tax. 
See id. We held that this category of personal property, as evidenced by legislative intent,
included only aircraft, not any other personal property. See id. at 568-69. In support of our
conclusion regarding the legislative intent of section 151.330(c), we cited Tax Code section
151.328(a)(1). Id. 

 Our reference to section 151.328(a)(1) in Southwest Airlines to clarify the
legislature's intent of former section 151.330(c) does not assist us in the resolution of the instant
cause. Our reading of both section 151.328(a)(1) and former section 151.330(c) in Southwest
Airlines was influenced by the pre-1985 Comptroller rule defining "licensed and certificated
carrier," which is no longer in effect today. See id. at 568. Moreover, in contrast to the parties
in Southwest Airlines who disputed the type of property exempt from taxes under former section
151.330(c), the parties in the instant cause do not dispute the type of property exempt from tax
under section 151.328(a)(1). Entitled "Aircraft," section 151.328(a)(1) clearly exempts aircraft
sales from tax. See Tex. Tax Code Ann. § 151.328(a)(1). Instead, the parties in this cause
disagree about which sales of aircraft section 151.328(a)(1) exempts. The Comptroller argues that
tax-exempt aircraft sales are only those sales to persons or entities licensed by the FAA to fly
aircraft for common carrier purposes. Taxpayers argue tax-exempt aircraft sales include those
sales intended by the purchaser to result in either the use or operation of the aircraft for common
carrier purposes. 

 In support of their argument, Taxpayers argue that if the legislature had intended
the Comptroller's post-1985 definition of "licensed and certificated carrier," it would have worded
the statute to read, "if sold to a certificated or licensed carrier of persons or property." Moreover,
Taxpayers assert that it makes no sense to insert the Comptroller's definition into the statute to
read, "if sold to a person using the aircraft as a person authorized [by the FAA]"; they argue that
while an aircraft can be used as a common carrier, it cannot be used as a person. Nevertheless,
other possible wording of a statute does not bear on our construction; rather, we focus on the
words actually used, even if ambiguous. The legislature is presumed to have chosen statutory
language carefully, intentionally using every word for a meaning and purpose. Jessen Assocs.,
Inc. v. Bullock, 531 S.W.2d 593, 600 (Tex. 1975); Tandy Corp. v. Sharp, 872 S.W.2d 814, 818
(Tex. App.--Austin 1994, writ denied). We reiterate that the Code Construction Act directs us to
consider the statute's administrative construction without regard to the statute's ambiguity. Code
Construction Act, Tex. Gov't Code Ann. § 311.023(6).

 Taxpayers additionally assert that other provisions of Tax Code section 151.328(a)
demonstrate that the legislature intended the phrase "licensed and certificated carrier" to designate
the intended use and operation of the aircraft. See, e.g., Tex. Tax Code Ann. § 151.328(a)(2)
(West Supp. 1995) (exempting sales of aircraft used for training pilots); id. § 151.328(b), (e)
(West 1992) (providing tax exemptions to repairs to or parts of aircraft owned or operated by
certificated or licensed common carriers). Taxpayers also argue that the Comptroller's agency
rules demonstrate that the phrase "certificated or licensed carrier" applies to the use and operation
of an aircraft. See, e.g., 34 Tex. Admin. Code § 3.297(d) (1995) (stating sales or use tax not due
on aircraft used by persons defined as licensed and certificated carriers); id. § 3.297(d)(1)
(explaining that items purchased by owner or operator of aircraft for repair of aircraft or its
component parts are exempt from taxation); id. § 3.297(d)(2) (exempting component parts affixed
to an aircraft "used as a licensed and certificated carrier device" from taxation). See also Tex.
Tax Code Ann. § 151.330(i) (West Supp. 1995) (referring to "vehicle" used as "a licensed and
certificated common carrier of persons or property").

 Despite Taxpayers' assertions, sales tax exemption provisions relating to aircraft
sales do not always provide exemptions based on aircraft use. See, e.g., Tex. Tax Code Ann.
§ 151.328(a)(3) (West Supp. 1995) (focusing on purchaser's identity); id. § 151.328(a)(4)
(focusing on geographical location of aircraft's first use). Furthermore, the same language of
section 151.328 that Taxpayers cite as examples of the statute's emphasis on the use of the aircraft
by either the owner or operator also comports with the Comptroller's post-1985 definition of
"licensed and certificated carrier" as a person. See Tex. Tax Code Ann. § 151.328(b), (d), (e)
(West 1992) (referring to aircraft or aircraft equipment operated, owned, or used by certificated
or licensed carriers); see also 34 Tex. Admin. Code § 3.297(d) (1995) (implementing taxation
classifications of Tax Code § 151.328(b), (d), (e) including exemption for tangible personal
property permanently affixed as component part of aircraft "used as a licensed and certificated
carrier device of persons and property") (emphasis added). Finally, Taxpayers argue that a sales
tax scheme which taxes an aircraft sale to a purchaser planning to use the aircraft for common
carrier purposes but does not tax the sales of component parts affixed to that aircraft is "illogical,
inconsistent and unreasonable." Nevertheless, we note that the legislature has broad powers to
determine taxation classifications and that courts will interfere only when there is a clear showing
that a tax classification has no reasonable basis. American Transfer & Storage Co. v. Bullock,
525 S.W.2d 918, 924 (Tex. Civ. App.--Austin 1975, writ ref'd); Hurt v. Cooper, 110 S.W.2d
896, 900-01 (Tex. 1937). Taxpayers have not presented summary judgment evidence or argument
clearly showing that the tax classification has no reasonable basis. (5)

 Section 151.328(a)(1) can be reasonably read as if the phrase "certificated or
licensed carrier" refers to the person purchasing the aircraft or the aircraft itself. We conclude
that the Comptroller's post-1985 definition of "licensed and certificated carrier" is not inconsistent
with section 151.238(a)(1) of the Tax Code. When the Comptroller's interpretation of the scope
of a tax exemption statute is reasonable, in that it harmonizes with the statute, then this Court is
bound to accept that interpretation regardless of the existence of other reasonable interpretations. 
Hammerman & Gainer, Inc. v. Bullock, 791 S.W.2d 330, 333 (Tex. App.--Austin 1990, no writ);
see also Bullock v. Hewlett-Packard Co., 628 S.W.2d 754, 756 (Tex. 1982) (stating courts must
uphold legitimate administrative rules even if, in court's opinion, rules are not wise, desirable,
or necessary). When the proper administrative officer construes a statute in a new way, and the
legislature subsequently reenacts that statute without substantial change, we will give that statute
the agency's same construction. See Humble Oil & Ref. Co. v. Calvert, 414 S.W.2d 172, 180
(Tex. 1967); Reed v. Texas Dep't of Licensing & Regulation, 820 S.W.2d 1, 3 n.2, 4 (Tex.
App.--Austin 1991, no writ) (holding court entitled to assume legislature, by failing to amend
statute, approves of agency's statutory interpretation). 

 We therefore adopt the Comptroller's administrative construction of section
151.328(a)(1) to provide sales tax exemptions on aircraft sales only when the purchaser of the
aircraft is a "licensed and certificated carrier" as defined by the Comptroller. Quorum did not sell
an aircraft to a purchaser who was a "licensed and certificated carrier." Instead, at the time of
the aircraft sale, the firm, as purchaser, allegedly planned to use the aircraft for charter purposes;
sometime after the sale, the firm entered into an agreement whereby a licensed or certificated
carrier, AMR Combs, agreed to operate the aircraft. Quorum's aircraft sale to the firm was not
tax-exempt. 

 When, as in the instant cause, the trial court's order does not specify the basis or
theory upon which the motion is granted, the summary judgment must be affirmed on any
meritorious theory of recovery presented in the motion. Rogers v. Ricane Enters., Inc., 772
S.W.2d 76, 79 (Tex. 1989). We have concluded as a matter of law that Quorum's aircraft sale
to the firm was not exempt from sales tax under section 151.328(a)(1). Accordingly, the trial
court correctly granted the Comptroller's motion for summary judgment and denied Taxpayers'
motion.

CONCLUSION


 We overrule both of Taxpayers' points of error and affirm the judgment of the trial
court. 



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 30, 1995

Do Not Publish Released for publication November 8, 1995. Tex. R. App. P. 90(c).
1.  See 14 C.F.R. pt. 135 (1995) (entitled "Air Taxi Operators and Commercial
Operators").
2.   Section 151.328(a)(1) provides:


(a) Aircraft are exempted from the [sales and use] taxes imposed by this chapter
if:


 (1) sold to a person using the aircraft as a certificated or licensed carrier
of persons or property; . . . .



Tex. Tax Code Ann. § 151.328(a)(1) (West Supp. 1995).
3.   In 1961, the statute read: "There are exempted from the taxes imposed by this Chapter
the receipts from the sale, use, storage, lease or other consumption of aircraft sold to persons
using such aircraft as certificated or licensed carriers of persons or property, . . . ." See Act
of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 24, § 1, 1961 Tex. Gen. Laws 71, 86 (Tex. Tax
Code Ann. § 151.328(a)(1), since amended) (emphasis added).
4. Summary judgment evidence established that the FAA certifies people, not aircraft, as
carriers. 
5.   Citing the Comptroller's decision in Hearing No. 11,161 (1981), Taxpayers additionally
argue that the apparent intent of § 151.328(a)(1) was to afford tax-favored treatment to those
persons placing an aircraft at the public's disposal. However, Taxpayers' cited authority does
not establish legislative intent; the taxpayers at that hearing "did not present much, if any,
evidence bearing on legislative intent." Tex. Comp. Pub. Acc'ts, Hearing No. 11,161
(August 7, 1981), 1981 WL 12462, at 4. The administrative judge only assumed the
legislative intent asserted by the taxpayers for purposes of discussion. Id. 



roper administrative officer construes a statute in a new way, and the
legislature subsequently reenacts that statute without substantial change, we will give that statute
the agency's same construction. See Humble Oil & Ref. Co. v. Calvert, 414 S.W.2d 172, 180
(Tex. 1967); Reed v. Texas Dep't of Licensing & Regulation, 820 S.W.2d 1, 3 n.2, 4 (Tex.
App.--Austin 1991, no writ) (holding court entitled to assume legislature, by failing to amend
statute, approves of agency's statutory interpretation). 

 We therefore adopt the Comptroller's administrative construction of section
151.328(a)(1) to provide sales tax exemptions on aircraft sales only when the purchaser of the
aircraft is a "licensed and certificated carrier" as defined by the Comptroller. Quorum did not sell
an aircraft to a purchaser who was a "licensed and certificated carrier." Instead, at the time of
the aircraft sale, the firm, as purchaser, allegedly planned to use the aircraft for charter purposes;
sometime after the sale, the firm entered into an agreement whereby a licensed or certificated
carrier, AMR Combs, agreed to operate the aircraft. Quorum's aircraft sale to the firm was not
tax-exempt. 

 When, as