**SOUTHWEST AIRLINES CO.,**
Appellant,

v.

**Honorable Bob BULLOCK, Comptroller of Public Accounts, et al., Appellees.**

No. 3–88–257–CV.

Court of Appeals of Texas,
Austin.

Jan. 31, 1990.

Reese L. Harrison, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, James F. Parker, Dallas, for appellant.

Jim Mattox, Atty. Gen., Marianne S. Dwight, Asst. Atty. Gen., Austin, for appellees.

Before POWERS, JONES and SMITH,* JJ.

JONES, Justice.

Southwest Airlines Company (Southwest), plaintiff below, appeals from a take-nothing judgment in a tax-refund suit brought pursuant to Chapter 112, Subchapter B, Texas Tax Code Ann. §§ 112.051–112.060 (1982 and Supp.1990).[1] Following a sales and use tax audit by the State Comptroller's office, Southwest was assessed a deficiency of $366,245.70 for the period January 1, 1979, to March 31, 1983. After an administrative hearing resulted in an adverse decision, Southwest paid the assessment under protest and filed suit in the district court of Travis County. As required by section 112.053 of the Code, defendants below were the State Comptroller, Treasurer, and Attorney General. Now appellees in this Court, they will be referred to collectively as the Comptroller. A non-jury trial de novo in the district court resulted in the take-nothing judgment from which Southwest appeals. We will affirm the trial court's judgment.

Southwest attacks the judgment by twenty-eight points of error, divisible into eight groups, claiming that the trial court erred in (1) receiving evidence of what Southwest characterizes as "unpublished, internal Comptroller policy"; (2) concluding that the tax exemption for a "licensed and certificated carrier" refers to the aircraft itself rather than the business entity; (3) deciding that certain items separately purchased and installed by Southwest on new airplanes do not constitute tax-exempt aircraft components; (4) determining certain items to be taxable maintenance items rather than exempt repair or replacement parts; (5) failing to find mobile baggage equipment used to transport luggage to be tax-exempt transportation devices; (6) failing to find repair and replacement parts for mobile baggage equipment to be tax exempt; (7) concluding that mobile baggage equipment did not constitute tax-exempt motor vehicles; and (8) failing to determine that plastic cups used for serving non-alcoholic beverages are tax-exempt food and drink.

Southwest, an airline company licensed by the Federal Department of Transportation to operate as an air carrier, provides air transportation between numerous cities both within and outside the State of Texas. Each of its aircraft has a certificate of airworthiness issued by the Federal Aviation Administration. During the audit period Southwest acquired twenty-four additional aircraft from Boeing. After receiving delivery of an airplane, Southwest

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

1. Unless otherwise indicated, all statutory references are to the Texas Tax Code.

would place certain items on the aircraft before putting it into service. These items included pillows and pillow cases, blankets, sweeper brushes, beer kit drawers, liquor carriers and kits, coffee pots, air sick bags, and magazine binders. In addition, Southwest periodically used nitrogen to fill the aircraft tires, oxygen to refill oxygen tanks on the aircraft, purogene to purify the aircraft's water system, and hydraulic fluid to refill the hydraulic system.

In its business, Southwest uses a wide range of items in addition to its aircraft. For example, during the audit period it used mobile baggage equipment such as baggage tugs, baggage carts, mobile belt conveyors, and conveyor belts to facilitate the handling of baggage and freight, and push-back tractors to push or tug the aircraft away from the gate. Although self-propelled, the baggage tugs, mobile belt conveyors, and push-back tractors were not licensed or inspected for use on public streets and highways. Within the terminal building, Southwest used such equipment as automatic ticket machines, metal detector systems, uniforms, and other miscellaneous items to carry on its business.

Southwest also served food and beverages to its passengers during flights. Beverages were served in plastic cups. Non-alcoholic beverages were served on a complimentary basis, in the sense that Southwest made no additional charge beyond the ticket price and did not make any refund to passengers who declined such beverages.

In general, the Tax Code provides that sales tax will be imposed on the sale of all taxable items, and use tax will be imposed on the storage, use, or other consumption of all taxable items. *See* §§ 151.051, 151.101. Subchapter H of Chapter 151 of the Code sets forth certain exemptions from sales and use taxes. For example, during the audit period section 151.328(a) exempted "[a]ircraft ... sold to a person using the aircraft as a certificated or licensed carrier of persons or property." [2] Section 151.330 provided as follows, in pertinent part:

**2.** The relevant sections of the Tax Code were codified from the general tax statutes in 1981. 1981 Tex.Gen.Laws, ch. 389, §§ 1–42, at 1490–

(c) The use of tangible personal property acquired outside this state and moved into this state for use as a licensed and certificated carrier of persons or property is exempted from the use tax imposed by Subchapter D of this chapter.

\* \* \* \* \* \*

(e) The storage or use of tangible personal property acquired outside this state for use as a repair or replacement part for and actually affixed in this state to a self-propelled vehicle that is a licensed and certificated common carrier of persons or property is exempted from the use tax imposed by Subchapter D of this chapter.

(f) The storage, use, or other consumption of tangible personal property that is acquired outside this state is exempted from the use tax imposed by Subchapter D of this chapter if the sale, use, or storage of the property would be exempted from the taxes imposed by this chapter had it been sold, leased, or rented in this state.

■ Southwest relies on these and other related exemptions in its challenge to the Comptroller's assessment. Accordingly, Southwest has the burden to show clearly that it comes within the exemptions, and all doubts must be resolved in favor of the Comptroller. *Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 272 (Tex.1979).

### COMPTROLLER'S POLICY INTERPRETATIONS

■ In its first group of points of error (one and two), Southwest asserts, on two grounds, that the trial court erred in receiving evidence of certain policy interpretations made by the Comptroller's office: (1) such interpretations are not published and therefore are not admissible, and (2) the assertion of such policies, or at least the ambiguity of the statutes and/or rules which the policies interpret, constitute affirmative defenses that were not pleaded by the Comptroller.

1787. We will not cite to pre-Code statutory provisions unless such provisions are significantly different from Code language.

The Tax Code authorizes the Comptroller to adopt rules "for the enforcement of the provisions of this title [relating to state taxation] and the collection of taxes and other revenues under this ' title." § 111.002(a). The Texas Administrative Procedure and Texas Register Act (AP-TRA) prescribes procedures for the adoption of such rules and their subsequent publication in the Texas Register. *See* Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 5–11 (Supp.1990).

In addition to formal rules, however, the evidence showed that the Comptroller's office issues various other policy documents, including hearing decisions, letters to taxpayers, legal memos, and memos explaining information to other agency personnel. Although no such documents were offered into evidence during the trial, the manager of the Comptroller's sales tax policy division attempted in her testimony to summarize various Comptroller's policies on subjects relevant to Southwest's claims. The trial court excluded some of the proffered testimony, but allowed other similar testimony to be received. Southwest asserts that the trial court erred in not excluding all of such testimony.

■ Initially, we conclude that the documents on which the challenged testimony was based are not "secret," as asserted by Southwest. The record contains ample evidence that such documents, although not "published," are made available to the public in a regular, organized fashion. Indeed, section 4 of APTRA requires that every agency "index and make available for public inspection all rules and all other written statements of policy or interpretations formulated, adopted, or used by the agency in the discharge of its functions ... and index and make available to public inspection all final orders, decisions, and opinions." Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 4(a) (Supp.1990). Accordingly, they would, in an appropriate case, be admissible as official interpretations of the Comptroller's own rules. *See Texarkana & Ft. S. Ry. v. Houston Gas & Fuel Co.*, 121 Tex. 594, 51 S.W.2d 284 (1932); *Lawyers Title Ins.*

*Corp. v. Board of Ins. Com'rs*, 207 S.W.2d 972 (Tex.Civ.App.1948, writ ref'd n.r.e.).

■ In the present case, however, it was not the documents themselves that were received in evidence, but testimony summarizing and explaining them. Besides the alleged secrecy of the policies, the only other ground on which Southwest objected to the admission of testimony describing the policies was the absence of pleadings of either the existence of the policies or the ambiguity of the rules they seek to interpret. The Comptroller pleaded only a general denial. However, a general denial is sufficient to place in issue a taxpayer's right to recover the taxes. *Calvert v. Texaco, Inc.*, 476 S.W.2d 897 (Tex.Civ. App.1972, writ ref'd n.r.e.). The taxpayer/plaintiff bears the burden of showing that he comes within the exemptions provided by the statutory scheme. *Bullock v. National Bancshares Corp.*, 584 S.W.2d at 272. The statutory scheme would, we believe, include the rules promulgated by the agency charged with enforcement of the relevant statutes. Thus, the establishment by the plaintiff of a prima facie case would necessarily include addressing relevant agency rules and interpretations thereof. Accordingly, we hold that agency rules and interpretations which are available to the public are not affirmative defenses that must be pleaded to avoid being waived under Rule 94 of the Texas Rules of Civil Procedure.

In addition, construction of the Tax Code is expressly governed by the Code Construction Act. Tex. Tax Code Ann. § 1.03 (Supp.1990). The Code Construction Act provides that "[i]n construing a statute, *whether or not the statute is considered ambiguous on its face*, a court may consider among other matters the ... administrative construction of the statute." Tex. Gov't Code Ann. § 311.023(6) (1988) (emphasis added).

Finally, in a trial before the court it is presumed that the trial court disregarded any evidence erroneously received and "founded his judgment on the competent testimony in the record." *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760, 765 (1942);

*see also Baxter v. Texas Dept. of Human Resources,* 678 S.W.2d 265, 267 (Tex.App. 1984, no writ). Points of error one and two are overruled.

### PROPERTY USED IN BUSINESS OF LICENSED AND CERTIFICATED CARRIER

In its second group of points of error (three through nine), Southwest asserts that a tax exemption for a "licensed and certificated carrier" refers not to the aircraft itself, but to the business entity using the aircraft. During the audit period, section 151.330(c) of the Tax Code provided:

> The use of tangible personal property acquired outside this state and moved into this state for use as a licensed and certificated carrier of persons or property is exempted from the use tax imposed by Subchapter D of this chapter.

Interpreting the phrase "licensed and certificated carrier" to mean the entity operating the aircraft, rather than the aircraft itself, Southwest argues that the statute exempts "not only aircraft and other vehicles used by a carrier to transport persons and property, but also applies to all personal property used by a certificated carrier in its business of transporting persons and property." In other words, Southwest maintains that all personal property, of whatever nature, that is used in its business is exempt from the use tax. We disagree.

■ By formal rule, the Comptroller has defined "licensed and certificated carrier" to mean

> the aircraft, vehicle, or other transportation device used to transport persons or property for hire in the regular course of business by a person authorized by the appropriate federal or state agency to be a common or contract carrier. Vehicles operated by persons holding only certificates of inspection or airworthiness certificates will not be regarded as licensed and certificated carriers.

34 Tex.Admin.Code § 3.297(a)(1) (Shepard's May 1, 1982). Testimony before the trial court indicated that the substance of Rule 3.297(a)(1) was adopted by the Comptroller in 1962 and has been in effect continuously since then. Valid rules promulgated by the Comptroller acting within his statutory authority have the force and effect of legislation. *Lewis v. Jacksonville Bldg. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976); *Sears v. Texas State Bd. of Dental Examiners,* 759 S.W.2d 748, 750 (Tex.App.1988, no writ). Moreover, a long-standing construction placed on a statute by the agency charged with its enforcement is entitled to "great weight." *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944); *Hightower v. State Comm'r of Educ.,* 778 S.W.2d 595, 597 (Tex.App.1989, no writ).

■ Southwest argues, however, that we should not follow this administrative construction. First, Southwest again asserts the absence of any pleading by the Comptroller that section 151.330 of the Tax Code is ambiguous. As discussed previously, in construing a statute the Code Construction Act directs us to consider the administrative construction of the statute without regard to its ambiguity. Tex. Gov't Code Ann. § 311.023(6). Next, Southwest argues that before an agency interpretation may be considered it must not be contrary to the statute. *See Citizens Nat. Bank v. Calvert,* 527 S.W.2d 175, 180 (Tex.1975). While this proposition is certainly correct, we do not consider that Comptroller Rule 3.297(a)(1) is in any way inconsistent with section 151.330(c) of the Tax Code. The Code does not, in section 151.330(c), extend its exemption to all personal property used "by" a licensed and certificated carrier; rather, it is for such property used "as" a carrier. Other provisions of the Tax Code demonstrate that the phrase "as a licensed and certificated carrier" was intended to apply to the vehicle rather than the business entity. For example, section 151.328(a)(1) of the Code establishes a specific exemption for aircraft "sold to a person *using the aircraft as a certificated or licensed carrier* of persons or property." (Emphasis added.) The language in section 151.328(a)(1) evinces a legislative intent to exempt only the aircraft itself from sales and use taxes. It would, therefore, be anomalous to give a broader construction

to section 151.330(c), a statute creating a general use tax exemption for "tangible personal property acquired ... for use as a licensed and certificated carrier." We conclude that the trial court and the Comptroller correctly construed section 151.330(c) of the Tax Code to exempt only the aircraft from sales and use taxes. Comptroller Rule 3.297(a)(1) is not contrary to the statute. Points of error three through nine are overruled.

## SEPARATELY INSTALLED AIRCRAFT EQUIPMENT

■ In its third group of points of error (ten through thirteen), Southwest asserts that the trial court erred in determining that certain items separately purchased and installed by Southwest on new airplanes do not constitute tax-exempt aircraft components. As stated previously, section 151.328(a)(1) of the Tax Code exempts "[a]ircraft ... sold to a person using the aircraft as a certificated or licensed carrier of persons or property." Under this provision and Rule 3.297 quoted above, the Comptroller exempts only aircraft and the component parts thereof.

Southwest purchased its new airplanes from Boeing. In equipping its new planes, however, Southwest separately purchased and installed certain items on the aircraft after they had been received in Texas, including the following: pillows and pillow cases, blankets, sweeper brushes, beer kit drawers, liquor carriers and kits, padlock seals, coffee pots, air sick bags, sanipak tubes and deodorants, and magazine binders. The trial court made findings of fact that these items were "passenger convenience items," not aircraft components. Southwest argues that the items are just as much "aircraft components" as other items that the Comptroller's office determined to be tax-exempt, such as first-aid kits, oxygen tanks, and fire extinguishers. Southwest also argues that these items would have been exempt from taxation if it had received the new aircraft with the items already installed; from this, Southwest reasons that it is being improperly forced to "forfeit" the exemption by installing the items itself. We disagree.

Section 151.328(a)(1) of the Tax Code exempts only "aircraft." In this context, whether any particular item is considered to be a component part of an aircraft depends, in our view, on whether it is reasonably essential to the functioning of the aircraft as a "licensed and certificated carrier." As mentioned previously, Southwest had the burden to show clearly that it fell within the exemption. The trial court found that Southwest had not met its burden with regard to the listed items. Without lengthening this opinion by examining the role of each item, we conclude that Southwest has not demonstrated as a matter of law that any of the items in question are reasonably essential to the functioning of Southwest's airplanes as licensed and certificated carriers.

In so holding, we do not conclude that such items would have been exempt from taxation had they been installed by Boeing as part of a "turn-key" purchase; mere attachment at the time of sale is not the standard. Nor do we conclude that such items are, as a matter of law, always taxable. We hold only that the trial court's findings of fact are sustainable by the evidence in this record. Points of error ten through thirteen are overruled.

## AIRCRAFT REPAIR OR REPLACEMENT PARTS

■ In its fourth group of points of error (fourteen through seventeen), Southwest asserts that the trial court erred in finding that nitrogen, oxygen, hydraulic fluid, and purogene are taxable maintenance items rather than exempt repair or replacement parts.

During the audit period section 151.330(e) of the Tax Code provided:

> The storage or use of tangible personal property acquired outside this state for use as a repair or replacement part for and actually affixed in this state to a self-propelled vehicle that is a licensed and certificated common carrier of persons or property is exempted from the

use tax imposed by Subchapter D of this chapter.

Comptroller Rule 3.297(c)(4) provided:

Sales or use tax is not due on aircraft repair and replacement parts acquired within or outside this state and actually affixed in this state to an aircraft qualified [as a licensed and certificated carrier].

The trial court found that "[n]itrogen, oxygen, hydraulic fluid and purogene are not component parts of an aircraft nor are those items repair and replacement parts, but they are maintenance items." The evidence reflected that of the mentioned items, nitrogen and hydraulic fluid, at least, are indeed essential to the operation of Southwest's aircraft. The evidence does not show as a matter of law, however, that these items fall within the tax exemption. First, the record reveals that the items are reflected on Southwest's books and records in a "non-capital" account, along with such items as fuel and oil. Southwest apparently does not contest the classification of fuel and oil as maintenance or supply items rather than repair or replacement parts. Second, the evidence is not conclusive that the items even constitute aircraft "parts." The term "part" is defined as "a constituent piece of a machine or tool either included at the time of manufacture or set in place as a replacement for the original piece." The Random House Dictionary of the English Language (2nd ed., unabr. 1987). We conclude that the listed gaseous or fluid items are not necessarily considered a constituent "piece" of an aircraft. We conclude that the record contains sufficient evidence to sustain the trial court's finding. Points of error fourteen through seventeen are overruled.

## MOBILE BAGGAGE EQUIPMENT

■ In its fifth group of points of error (eighteen through twenty-two), Southwest asserts that the trial court erred in finding that mobile baggage equipment does not constitute tax-exempt transportation devices.

As stated previously, section 151.328(a)(1) of the Tax Code, relating specifically to aircraft, exempts from both sales and use taxes "aircraft" used as "a certificated or licensed carrier of persons or property." Section 151.330(c), relating to common carriers generally, exempts from use taxes any "tangible personal property acquired outside this state and moved into this state for use as a licensed and certificated carrier of persons or property." Comptroller's rule 3.297(a)(1), relating to carriers generally, defines "licensed and certificated carrier" to mean "the aircraft, vehicle, or other transportation device used to transport persons or property."

The record shows that Southwest used its baggage carts, baggage tugs, and mobile belt conveyors to transport baggage and freight between the terminal building and the aircraft during loading and unloading. Relying on the phrase "or other transportation device" in Rule 3.297(a)(1), Southwest argues that the items in question are used to transport property and therefore constitute tax-exempt "licensed and certificated carriers." We disagree.

We concluded above that section 151.328(a)(1) of the Tax Code exempts only aircraft from sales and use taxes. We also concluded that the general provision in section 151.330(c) should not be given a construction which results in a broader exemption for aircraft than that allowed by the specific provision in section 151.328(a)(1). In the airline industry it is the aircraft that are moved into this state "for use as a licensed and certificated carrier of persons or property." It would strain this statutory language unduly to include as "licensed and certificated carriers" such items as baggage carts, baggage tugs, and mobile belt conveyors. Comptroller Rule 3.297(a)(1) does not demand the conclusion that it was meant to include such items in the definition of "licensed and certificated carrier." Therefore, we are not permitted to give it a construction that is contrary to the statute. *Cf. Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968) (agency rules and regulations must be consistent with state constitution and statutes); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d at 310 (administrative

rules are ordinarily construed in the same manner as statutes); *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex.1984) (courts are to construe statutes so as to harmonize with other relevant laws, if possible).

Moreover, the testimony revealed that since 1962 the Comptroller's interpretation has consistently been to allow the exemption only for a carrier device "that carries persons or property from one destination to another for hire." We have previously concluded that the trial court did not err in receiving this evidence. Points of error eighteen through twenty-two are overruled.

## REPAIR OR REPLACEMENT PARTS TO MOBILE BAGGAGE EQUIPMENT

In its sixth group, point of error twenty-three, Southwest asserts that repair and replacement parts for mobile baggage equipment are also exempt. Our earlier discussion disposes of this point. Point of error twenty-three is overruled.

## MOTOR VEHICLES

In its seventh group of points of error (twenty-four and twenty-five), Southwest asserts that the trial court erred in failing to find mobile baggage equipment to be "motor vehicles," exempt from sales and use taxes. The evidence established that baggage tugs, mobile belt conveyors, and push-back tractors are self-propelled motor vehicles that are physically capable of being driven on public streets and highways. Section 151.308(7) of the Tax Code provided an exemption for "motor vehicles, trailers, and semitrailers as defined, taxed, or exempted by Chapter 152 of this code." Beginning January 1, 1982, Chapter 152 defined "motor vehicle" to include "a self-propelled vehicle capable of transporting persons or property on a public highway." § 152.001(3)(A). Before 1982, "motor vehicle" was defined in the general tax statutes to mean "every self-propelled vehicle in or by which any person or property is or may be transported upon a public highway." 1977 Tex.Gen.Laws, ch. 233, § 1, at

630 [Tex.Tax.–Gen. art. 6.03, since repealed]. Southwest argues that the terms "capable" and "may" refer to *physical* capability, thus bringing the vehicles in question here within the statutory definition. We disagree.

We believe the clear legislative intent was to exempt only such vehicles as were *legally* capable of travelling on public streets and highways. To construe the statute otherwise would result in exempting from sales and use taxes vehicles that were neither designed nor intended for use on public streets. The undisputed testimony shows that Southwest's baggage tugs, mobile belt conveyors, and push-back tractors were not licensed or inspected for highway use, and their operators were not required to have a license to drive them. In short, they could not legally be driven on public streets or highways, and therefore did not fall within the exemption.

In addition, in finding of fact fifty-seven the trial court found that "[s]ince 1941, the Comptroller's longstanding policy on motor vehicles has been that a vehicle must legally be able to operate on the public highways in order to qualify for the exemption as a motor vehicle." The record contains sufficient evidence to sustain this finding. Points of error twenty-four and twenty-five are overruled.

## PLASTIC CUPS

In its eighth group of points of error (twenty-six through twenty-eight), Southwest asserts that the trial court erred in failing to find that plastic cups used for serving non-alcoholic beverages are tax-exempt food and drink.

Section 151.314(d) of the Tax Code provided: "Food and drink purchased by a common carrier for the purpose of serving passengers traveling en route aboard the carrier are exempted from the taxes imposed by this chapter." Comptroller Rule 3.293(c)(2) provided:

> For the purposes of this paragraph, "food" includes soft drinks and candy but does not include alcoholic beverages. Tax is not due on the sale of food when:
> \* \* \* \* \* \*

(F) Purchased by common carriers to be served passengers en route aboard such carriers.

34 Tex.Admin.Code § 3.293(c)(2) (Shepard's 1982). Southwest argues that the plastic cups in which it serves its passengers complimentary non-alcoholic beverages constitute "food and drink" and are therefore exempt under section 151.314(d). We find this argument to be without merit. On its face, the statutory exemption applies only to food and drink. Plastic cups are neither. Southwest has failed to show as a matter of law that its plastic cups fall within the quoted exemption.

Southwest also argues, however, that its plastic cups fall within another exemption. Comptroller Rule 3.293(f)(3) provided:

Operators of eating establishments, caterers, and other food service operators may purchase on resale or exemption certificates those items which are furnished to their customers with the food or beverages; these items must be of a nonreusable nature or qualify for exemption as wrapping or packaging materials. Examples of such items shall include nonreusable paper, wooden, plastic, and aluminum articles. Other items included are ... cups (paper, plastic, or styrofoam), ....

Southwest does not contend that its plastic cups qualify as wrapping or packaging materials, an exemption created by section 151.321(a) of the Tax Code. Southwest argues, however, that it falls within the phrase "other food service operators" and therefore is entitled to the exemption recognized by Rule 3.293(f)(3) for nonreusable items furnished to customers along with food or beverages. We disagree.

The fact that Southwest is a licensed air carrier would not, in and of itself, disqualify it from also being a food service operator. However, the phrase logically implies something more than the distribution to its customers of complimentary food and drinks. Indeed, the Comptroller has long interpreted its own rule as providing an exemption only to those in the business of *selling* food. The evidence in the present case established that Southwest's passengers who do not want a complimentary non-alcoholic drink cannot have the price of their ticket reduced accordingly.

Southwest argues, however, that the cost of the drinks and cups is ultimately reflected in the price of each ticket, thus making their distribution a "sale" whether the passengers accept them or not. Because it "sells" its non-alcoholic beverages, Southwest asserts, it must be a food service operator. We are not persuaded that a theoretical increase in the ticket price can be said to convert a complimentary offer of a beverage into a sale, and such a "sale" to convert an air carrier into a food service operator. Certainly it does not do so as a matter of law. Points of error twenty-six through twenty-eight are overruled.

## CONCLUSION

All of Southwest's points of error are overruled. In overruling the legal sufficiency points, we have rejected all evidence contrary to the trial court's findings and have considered only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In overruling the factual sufficiency points, we have considered all of the evidence and have determined that the challenged findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The judgment of the trial court is affirmed.

POWERS, J., not participating.