# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00537-CV

### GATX Terminals Corporation, Appellant

### v.

### Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellees[1]

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. 96-10815, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

GATX Terminals Corporation (GATX) operates two facilities on the Houston ship channel, referred to as "tank farms," where petroleum and petrochemical products are unloaded from transport vehicles and stored in large, steel tanks until they are ready to be loaded again for distribution. The Comptroller assessed taxes against GATX for services performed at its Galena Park facility during audit periods from April 1989 through August 1992, and from September 1992 through June 1996. GATX sought a redetermination of the taxes and a refund from the Comptroller. *See* Tex. Tax Code Ann. §§ 111.009, .105 (West 2001). After the Comptroller denied the request,

---

[1] The attorney general is a necessary party to a taxpayer suit. Tex. Tax Code Ann. § 112.053 (West 2001). The interests of the Comptroller and the Attorney General coincide in this cause. Therefore, we will refer to appellees as the Comptroller for convenience.

GATX paid the deficiency under protest and subsequently filed suit in district court seeking a refund. *See id.* §§ 112.051, .052, .151.

The Tax Code designates "real property repair and remodeling" as a taxable service. *Id.* § 151.0101(a)(13) (West 2002). The Comptroller has implemented a rule which describes the types of services that are subject to tax and classifies as non-taxable two activities: "maintenance" and "new construction." *See* 34 Tex. Admin. Code § 3.357 (2001) (Comptroller of Public Accounts, Labor Relating to Nonresidential Real Property Repair, Remodeling, Restoration, Maintenance, New Construction, & Residential Property) ("Rule 3.357"). GATX argued to the Comptroller and the district court that repainting its tanks is non-taxable maintenance, and that work performed to bring the facility into compliance with environmental regulations is non-taxable new construction. The district court tried the issues de novo. *See* Tex. Tax Code Ann. § 112.054 (West 2001).

After awarding certain refund amounts stipulated to by the parties, the district court denied the balance of GATX's claims for a refund.[2] GATX presents compelling arguments for why the disputed services should not be classified as taxable repair and remodeling. After closely reviewing the definitions set forth in the statute and in the Comptroller's rules and decisions, however, we find that the evidence is sufficient to uphold the trial court's judgment denying the refunds.

---

[2] GATX filed two separate suits which were consolidated for trial and disposition. The parties stipulated that GATX was entitled to recover a refund of $64,967.31 in sales taxes paid for tank cleaning and vacuum truck services from 1989 to 1991 and a refund of $142,944.22 in City of Houston sales taxes paid from 1989 to 1992, plus statutory interest pursuant to sections 112.060 and 112.155 of the tax code. *See* Tex. Tax Code Ann. §§ 112.060, .155.

## DISCUSSION

### *Standard of Review*

As the parties disagree over the appropriate standard of review, we will clarify our level of review over this matter. Repair and remodeling services that are performed on real property are made taxable by statute. *Id.* § 151.0101(a)(13) (West 2002). The Comptroller has the exclusive jurisdiction to interpret whether services fall in this category. *Id.* § 151.0101(b). In this capacity, the Comptroller has implemented Rule 3.357. GATX did not challenge the rule on the grounds that it contravened or was otherwise inconsistent with the legislative intent as expressed in section 151.0101(a) of the tax code. Indeed, the trial court expressly found that GATX had challenged neither the validity or application of Rule 3.357.[3] The only issue before the trial court, then, was whether the facts of this case established that the disputed services constitute taxable repair and remodeling as determined by the definitions promulgated in Rule 3.357.

There being no challenge to the rule as implemented, the rule as applied depended on findings made by the trier-of-fact. After a de novo trial of the issues, the trial court found that the Comptroller had met its burden of proof and that GATX failed to establish that the services were non-taxable activities. The court supported its judgment with findings of fact and conclusions of law. Findings of fact in a case tried to the court have the same force and effect as a jury verdict. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994); *Starcrest Trust v. Berry,* 926 S.W.2d 343, 352 (Tex.

---

[3] The trial court's conclusions of law include number thirty-one: "The application and validity of Comptroller Rule 34 Tex. Admin. Code § 3.357 has not been contested and the rule applies to the facts of this case." The findings of fact include number twenty-five: "GATX does not contest the application or validity of 34 Tex. Admin. Code § 3.357."

3

App.—Austin 1996, no writ). Likewise, findings of fact are reviewable for factual and legal sufficiency according to the same standards as jury findings. *Catalina,* 881 S.W.2d at 297. To reach a different result, GATX must establish the lack of evidentiary support for these findings.

GATX conceded at oral argument that in light of the trial court's findings of fact and conclusions of law on the controlling issues, its appeal was limited to legal and factual sufficiency of the evidence challenges. It has also asserted, however, that this Court can determine the disputed issues as a matter of law because the material fact findings are, in effect, conclusions of law. While we agree with GATX that the ultimate issue—whether the services are taxable—presents a question of law, this legal issue depends on the trier-of-fact's resolution of the underlying factual issues. Moreover, we reject appellant's characterization of the instant case as one requiring statutory interpretation. As we have stated, GATX does not challenge the Comptroller's administrative rule which, with the statute and the decisions of the Comptroller, govern this appeal.

GATX alternatively asserts that we can decide the issues as a matter of law because the material facts are undisputed. Contrary to GATX's assertion, the record reflects that the facts were disputed at trial.[4] The trial court weighed the evidence presented by both sides and decided in the Comptroller's favor. We will review the sufficiency of the evidence to support the trial court's ultimate findings that the activities were taxable.

---

[4] Moreover, the cases on which GATX relies are distinguishable as each involved patently legal determinations. *See, e.g.*, *United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 541-42 (Tex. 1998) (discussing whether plaintiff can recover on a "bystander" cause of action); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997) (discussing probable cause determination in a malicious prosecution case); *Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 902 (Tex. App.—Texarkana 2001, no pet.) (discussing existence of duty in negligent hiring case).

At the outset, however, we must determine which party had the burden of proof below. The Comptroller has the burden to make a prima facie case regarding a taxpayer's alleged deficiency in taxes; once it has done so, the burden shifts to the taxpayer to present evidence controverting the Comptroller's prima facie showing. *See* Tex. Tax Code Ann. § 111.013 (West 2001) (a certificate by the Comptroller that shows a delinquency is prima facie evidence of the stated tax); *see also Big Country Club, Inc. v. Humphreys*, 511 S.W.2d 315, 317 (Tex. Civ. App.—Beaumont 1974, writ ref'd n.r.e.); *Smith v. State*, 418 S.W.2d 893, 896 (Tex. Civ. App.—Austin 1967, no writ). The taxpayer, however, bears the burden of showing that he comes within a statutory exemption from tax. *Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 567 (Tex. App.—Austin 1990, no writ) (taxpayer has burden to prove he comes within exemptions provided by statutory scheme, which includes the rules promulgated by the agency charged with enforcement of the relevant statute).

The exemptions at issue are not created by statute, but by the Comptroller's rule excepting maintenance and new construction from taxable services. *See* 34 Tex. Admin. Code § 3.357(a)(4), (a)(5). The Comptroller's decisions indicate that if the taxpayer raises either of these exceptions, the Comptroller must initially establish that the services qualify as maintenance or new construction. Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 30,911 (Dec. 6, 1999) (final decision upholding audit as amended); *id.* Docket No. 31,904 (May 12, 1994) (final decision upholding audit in part and amending it in part). Once it has done so, the burden shifts to the taxpayer to prove that the services qualify for one of the exceptions to taxation. *Id.* Docket Nos. 30,911 & 31, 904; *see also North Alamo Water Supply Corp. v. Willacy County*

5

*Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991) (burden of proof to establish statutory exemption on the taxpayer); *Southwest Airlines Co.*, 784 S.W.2d at 567.

**I. Tank Repainting**

To prevent its steel storage tanks on the coast from rusting, GATX paints them with a three-coat application. The environmental forces that are present on the ship channel—harsh sun, salt, and rain—cause the paint to deteriorate and the metal to rust. Over time as the paint is exposed to these forces, the top layer of paint wears down to expose the intermediate layer, which in turn eventually wears down to expose the bottom layer until the steel itself is exposed. As these intermediate layers of paint become visible, GATX can gauge how much longer the paint will remain on a particular tank and approximately when it will need to be repainted. GATX then arranges to have certain tanks repainted, which requires that the tanks be taken out of service.

In the absence of Rule 3.357, one might assume that repainting the tanks meets the common-sense definition of maintenance performed to prevent the tanks from rusting. Under that rule, however, repainting is presumed to be a taxable activity unless the taxpayer affirmatively shows that the repainting meets the specific requisites of maintenance as set out in the rule. 34 Tex. Admin. Code § 3.357(b)(8). Rule 3.357 defines maintenance as follows:

> For operational and functioning improvements to realty, maintenance means scheduled, periodic work necessary to sustain or support safe, efficient, continuous operations, or to prevent the decline, failure, lapse, or deterioration of the improvement. Taxable real property services covered by § 3.356 of this title (relating to Real Property Service) do not qualify as maintenance.

*Id.* § 3.357 (a)(4). The rule further defines "scheduled" and "periodic." "Scheduled" work is that which is "anticipated and designated to occur within a given time period or production level." *Id.* § 3.357(a)(4)(A). "Periodic" activity for purposes of Rule 3.357 is "ongoing or continual or at least occurring at intervals of time or production which are generally predictable." *Id.* § 3.357(a)(4)(B).

The Comptroller's previous decisions in this area have clarified both of these terms.[5] These decisions have held that scheduled work is arranged in advance rather than on an as-needed basis. *See* Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 28,468 (Nov. 2, 1992) (Comptroller's final decision amending audit). As-needed work does not qualify as scheduled because it is not performed until someone directs that it be done. *Id.* Docket No. 30,911. The Comptroller's administrative decisions have held that periodic service is that which is performed in repeated cycles or at regular intervals; work that is prompted by a subjective judgment is not periodic. *Id.* Docket No. 28,468. In other words, the condition that maintenance be periodic requires the performance of some task at regular intervals, not when someone exercises a judgment call. *Id.* Docket No. 30,911.

The trial court made the following findings of fact:

- The tank repainting in issue was neither "scheduled" nor "periodic."

---

[5] These decisions are available to the public. *See* Tex. Gov't Code Ann. § 2001.004(3) (West 2000) ("agency shall . . . index, cross-index to statute, and make available for public inspection all final orders, decisions, and opinions"). The decisions are relevant to show the Comptroller's interpretation of its rules. *See Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 567 (Tex. App.—Austin 1990, no writ) (relying in part on what is now section 2001.004(3) to conclude that in an appropriate case the Comptroller's decisions are admissible as official interpretations of the agency's own rules).

- GATX failed to rebut the presumption that the tank repainting was a restoration or remodeling activity.

- The tank repainting in issue is not real property maintenance.

As a taxpayer challenging the taxability of repainting services, GATX had the ultimate burden to prove that the repainting occurs as part of periodic and scheduled maintenance. 34 Tex. Admin. Code § 3.357(b)(8); Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 30,908 (July 28,1995) (final decision by the Comptroller amending, upholding, audit). In reviewing the legal sufficiency of an adverse finding on which the party had the burden of proof, we must first examine the record for evidence that supports the finding, ignoring any evidence to the contrary. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995). More than a scintilla exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable people to differ in their conclusions. *Id.* at 499. If we find that no evidence supports the finding, then we must examine the entire record to determine if a contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690.

To prevail in a factual sufficiency challenge, a party who had the burden of proof at trial must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). In reviewing the finding, we must first examine the record to determine whether there is some evidence to support the finding, and then we determine, in light of the entire record, whether the finding is so contrary to the overwhelming

weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

### *The Evidence at Trial*

Based on the evidence GATX presented at trial, the trial court failed to find that the tank repainting was scheduled or periodic. GATX challenges this failure to find and points to the testimony of Alan Muyskens, who was the regional engineering manager for the GATX facility in Houston,[6] to support its position that its tank repainting activities were both scheduled and periodic. Mr. Muyskens testified that the average lifetime for a paint job on one of the tanks in the Gulf Coast area is about ten years. Based on the average lifetime of a paint job, Mr. Muyskens concluded that the GATX tanks would need to be repainted about every ten years. He estimated that the tanks, which each have a useful life of up to sixty years, are painted multiple times during the period they are in service. GATX argues that Mr. Muyskens's testimony establishes that the tank repainting services are periodic.

It also relies on Mr. Muyskens's testimony to show that the painting is scheduled. The witness testified that the repainting activity is a "formal budgeted scheduled maintenance program." The company schedules a certain number of tanks for painting at the beginning of each year. Once the initial list of tanks is determined, GATX considers various factors to decide whether it is feasible to take a certain tank out of service for repainting: (1) the contents of the tank, (2) who the leasing customer of the tank is, and (3) how the customer is utilizing the particular tank. GATX argues that

---

[6] Mr. Muyskens now holds this position with Kinder Morgan Terminals, which was formerly GATX Terminals in Houston.

the repainting is "scheduled" because it is anticipated that it will occur approximately every ten years and because some repainting is included on the tank farm's maintenance schedule at the beginning of each year.

The Comptroller counters that the evidence is legally and factually sufficient to support the court's failure to find the tank repainting was scheduled or periodic and to uphold the affirmative finding that it was not. The Comptroller points out that the timing of repainting any particular tank is contingent upon various factors other than the condition of the paint. At trial, Mr. Muyskens testified that other factors, such as the customer's contract, affect the company's decision when to repaint the tank. The Comptroller called as its witness the purchasing manager for GATX, Frances Yvonne Moore, who agreed with Mr. Muyskens that several variables affect whether a tank is repainted. She also testified that the decision to paint a tank lies with the terminal manager, the terminal engineer, and the maintenance manager. Ms. Moore described the company's tank repainting as an on-going project, but one without a formal written policy or any documented schedule.

In addition, the Comptroller takes issue with appellant's characterization of Mr. Muyskens's testimony and notes that he contradicted GATX's earlier assertions that the tanks are repainted every ten years "whether they need it or not." At trial, Mr. Muyskens acknowledged that the tanks are actually repainted on an as-needed basis, depending on the various factors that the company takes into account. The Comptroller relies on several of its previous decisions which hold that repainting on an as-needed basis does not constitute scheduled work.

As additional evidence, the Comptroller notes that GATX classifies its maintenance projects as either (1) base plant maintenance or (2) other maintenance projects. Base plant projects

include maintenance that is routine and that has consistent year-to-year expenses. One example includes soil sterilization at the facilities. Maintenance projects, on the other hand, include services that are performed regularly but not necessarily daily, monthly, or quarterly. Ms. Moore testified that the expenses associated with these "special projects" are not consistent because of variables such as the size and the number of tanks involved. Ms. Moore testified that tank repainting is classified in the second category.

Based on our review of the record, the evidence supports the trial court's failure to find that the repainting activities at issue are scheduled and periodic. To overcome the presumption that repainting is a taxable service, GATX was required to "substantiate by way of maintenance schedules or work orders or other evidence that the services meet the definition" of maintenance on real property. *See* 34 Tex. Admin. Code § 3.357(c)(2). Such evidence is necessary to show that the work was not done on an as-needed or as-recommended basis. Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 30,908. GATX failed to make this showing; indeed, the record is replete with evidence that indicates that the tanks are repainted only as needed.

The decision to repaint a tank is largely made at the discretion of GATX managers and not by strictly objective standards. The tanks are not placed on arbitrary maintenance schedules. Subjective factors, independent of the condition of the paint, play a significant role in determining the frequency of repainting the tanks. Moreover, the work is not done periodically as that term has been interpreted in real property services cases. GATX has no written document or formal policy outlining the frequency of tank repainting. The only "period" GATX points to is the average duration of a

11

paint job in the Gulf Coast area; the average lifetime of a paint job, however, is not evidence that GATX actually schedules and paints its tanks at ten-year intervals.[7]

Given this evidence, reasonable minds could reach differing conclusions as to whether the tank repainting at the GATX facility constitutes periodic and scheduled maintenance under Rule 3.357. Having found that more than a scintilla of evidence supports the failure to find that the tank repainting is maintenance, we find that GATX failed to rebut the presumption that repainting is repair or remodeling. We therefore uphold as legally sufficient the finding that the manner in which GATX repaints its tanks is a taxable activity. *See Crye,* 907 S.W.2d at 499. Furthermore, based upon our review of the record in its entirety, the trial court's finding is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Croucher,* 660 S.W.2d at 58. As the trial court's finding is both legally and factually sufficient, we overrule appellant's first issue.

## II. Installation of Vapor Recovery Equipment

In its second issue, GATX contends that the construction done to comply with federal environmental regulations constitutes non-taxable new construction, not taxable modification or restoration. Mr. Muyskens testified that the purpose of a vapor recovery system is to collect vapors that are emitted when the petroleum and petrochemical products are transported between the loading vehicle and the tanks. According to his testimony, vapors are displaced as the tank fills with liquid. The recovery system collects the vapors and conveys them to an incinerator or "flare" which burns

---

[7] We note that there was testimony regarding an industry standard published by the American Petroleum Institute that governs some types of maintenance. The testimony is conflicting and unclear; as such it does not provide support for either party's position and we do not rely on it.

12

the vapors to prevent their absorption into the atmosphere. Federal and state regulations that were implemented in 1990 required GATX to modify its recovery of vapors. After GATX installed equipment to meet the new mandates, the Comptroller assessed taxes on the cost of the services as repair or remodeling.

At trial, the Comptroller argued that the work came within the definition of "remodeling or modification," which is a category of taxable services under Rule 3.357. *See* 34 Tex. Admin. Code § 3.357(a)(8). The rule defines the category as follows:

> Remodeling or modification—To make over; *rebuild*, replace, or *upgrade* existing real property. However, the replacement of an item within an operating and functioning unit in accordance with paragraph (4) of this subsection ["maintenance"] is not taxable remodeling or modification. Finish out work performed after initial finish out has been done is remodeling even though the improvement has not been occupied. An example would be a shopping complex completely finished by the developer prior to renting to tenants. A prospective tenant wants a different color scheme before taking possession. The repainting by the developer is remodeling.

*Id.* (emphasis added). The Comptroller specifically argued that the new vapor recovery and metering equipment fit the description of an upgrade or rebuild. GATX responded that the work instead was new construction as defined by section (a)(5) of the rule. *See id.* § 3.357 (a)(5). That section reads as follows:

> New construction—All new improvements to real property including initial finish out work to the interior or exterior of the improvement. An example would be a multiple story building which has only had its first floor finished and occupied. The initial finishing out of each additional floor prior to initial occupancy will be considered new construction. New construction also includes the addition of new footage to an existing structure.

*Id.*

13

The issue trial was whether the work was a taxable upgrade or rebuild, as urged by the Comptroller, or new construction as urged by GATX. The Comptroller had the initial burden to prove that the services constituted an upgrade or rebuild. When GATX raised the new construction exception, the Comptroller was also compelled to prove that the services did not meet the conditions of new construction under the rule. In this situation, Rule 3.357 does not create a presumption in favor of classifying the services as repair or remodeling; therefore, the burden of proof remained with the Comptroller. *See id.* § 3.357.

After hearing the evidence, the trial court made the following findings of fact:

- GATX's conversion from an "open" loading system to a "closed" loading system and the related electrical and metering work made over, rebuilt, replaced and upgraded existing real property improvements.

- GATX's conversion from an "open" loading system to a "closed" loading system and the related electrical and metering work was not new construction.[8]

The trial court determined that the Comptroller had met its burden on both issues and concluded that the conversion from an "open" to a "closed" loading system was a repair and remodeling activity, subject to taxation. GATX challenges the evidentiary support in the record for the underlying findings of fact to support this conclusion.

A challenge to the legal sufficiency of an adverse finding on an issue on which the appellant did not have the initial burden of proof at trial requires a party to demonstrate that there is

---

[8] Rule 3.357 separately defines taxable repairs. *See* 34 Tex. Admin. Code § 3.357(a)(9) (2001). We note that the trial court made findings of fact that the converted system and metering device were repairs as defined by the rule. We do not address these findings of fact, however, as the parties have directed their arguments on appeal to the court's finding that the services were an upgrade as defined by the rule.

no evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58 (Tex. 1983). In reviewing a no-evidence point, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). If there is more than a scintilla of evidence to support the finding then the no-evidence challenge fails. *See Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). In a challenge to the factual sufficiency of an adverse finding on an issue on which the appellant did not have the burden of proof at trial, we weigh and consider all of the evidence that supports the finding and that which is contrary to it. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176.

### *The Evidence at Trial*

At trial, GATX introduced photographs of the tank farm to show the appearance of the area before and after installation of the additional equipment. GATX presented as its only witness Mr. Muyskens, who was the initial project manager for the installation of the new metering and vapor recovery equipment. He testified regarding the construction project, its purpose, and its effect on other facets of the tank farm.

Mr. Muyskens described the vapor collection system at the facility prior to 1992 as an incinerator with a "vapor header" that went to three truck racks to which vapor hoses were connected. To comply with governmental regulations, GATX replaced the old undersized incinerator and constructed a new flare. GATX also put new hoses on each truck rack. As a result of the new

15

hoses and other changes, the delivery of the liquid from the loading vessel to the tanks was accomplished by a completely sealed process to prevent the escape of vapors.

According to Mr. Muyskens, the new closed collection system required GATX to change the way it measured products loaded into the tanks. Prior to 1992, a man would stand on top of the loading vessel and put a graduated stick into the tank opening. Mr. Muyskens explained that as the liquid was filling up the tank, the man would look at the stick to gauge how much liquid was in the container and when to stop the loading process. After sealing the opening on top of the tank, GATX had to install a metering device to gauge the amount of liquid entering the tank; this device was connected to a flow computer. To emphasize the scale of the installation, Mr. Muyskens testified that where there had been only "dirt" before, a concrete slab now stood on which the flare and new piping were installed. He also testified that "there was more square footage of flare . . . of piping . . . of equipment . . . [and] of blowers" and that "cubic footage" was added.

The Comptroller insisted that the new recovery system and metering device constituted an "upgrade [to] existing real property." *See* 34 Tex. Admin. Code § 3.357(a)(8). During cross-examination, Mr. Muyskens acknowledged that the reason GATX installed the new vapor recovery system was to comply with governmental regulations. This fact, in the Comptroller's view, supported the finding that the work was a rebuild or upgrade legally required for GATX to continue operations; it did not enhance the storage capacity of the tank farm or otherwise improve the facility's business. On cross-examination, Mr. Muyskens acknowledged that while the product is loaded differently, no new loading spots were added, and the same amount of product is loaded as before. The Comptroller emphasized that while GATX had modified the way in which it delivers its

16

product into the tanks to more efficiently collect vapors, because the same amount of product was loaded, the work could only be classified as an upgrade.

In a previous decision of the Comptroller cited by GATX, the replacement of old equipment with new was held not to constitute new construction, but was classified as an upgrade or remodeling. *See* Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 29,296 (Feb. 8, 1994) (Comptroller's final decision amending audit). Similarly, a decision cited by the Comptroller held that an electric utility company's construction of a new transmission line incorporating some new equipment with pre-existing equipment was remodeling. *See id.* Docket No. 27,509 (Jan. 20, 1993) (Comptroller's final decision upholding audit as amended). That decision concluded that because the end result was a rebuilt structure that continued to function as an electric power line, albeit at increased capacity, the work was taxable remodeling. *See id.*

Previously, the Comptroller has ruled that the installation of a more efficient vapor recovery system at a gas station was an upgrade or modification to real property rather than new construction. *See id.* Docket No. 36,044 (July 29, 1998) (Comptroller's final decision upholding deficiency as indicated in audit). An accompanying finding of fact to that administrative decision noted that while the new system increased the amount of collected vapors, it did not improve the principal business of the gas station, *i.e.*, the dispensing of fuel from the pump to customers' cars. *See id.* The decision concluded that the installation should be viewed as a modification and upgrade because it modified the manner in which the fuel was dispensed but did not otherwise change the station's business. *Id.*[9]

---

[9] GATX points out that the Comptroller's decision in Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 36,044 (July 29, 1998) (Comptroller's final

Based on the record, previous decisions, and the unchallenged definitions contained in Rule 3.357, we find that the evidence is both legally and factually sufficient to support the trial court's finding that the work at issue was an upgrade or rebuild and not new construction. The Comptroller presented more than a scintilla of evidence to support the finding. *See Moore & Kimmey, Inc.*, 48 S.W.3d at 347. Moreover, the finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176.

As the Comptroller initially proved the taxability of the service, the burden shifted to GATX to prove that the installation fell within the exception. The court found that the work did not constitute new construction under Rule 3.357. GATX challenges the sufficiency of the evidence to support this finding. GATX argues that the extensive nature of the work done to comply with the environmental standards demonstrates that this was more than an upgrade, contrary to the trial court's finding. It also contends that the additional equipment now in place constitutes additional square footage as envisioned by the definition of new construction. That definition, however, speaks in terms of the addition of "*new footage to an existing structure.*" *See* 34 Tex. Admin. Code § 3.357(a)(5) (emphasis added). This phrase contemplates adding a new room to an existing building, not the addition of new *equipment*. *See* Tex. Comptroller of Pub. Accounts, *Taxpayer Hearing on Disputed Audit*, Docket No. 31,904.

---

decision upholding deficiency as indicated in audit) was reversed on appeal to the district court and urges this Court to view the district court's decision as authority. We acknowledge that the Comptroller's decision in Docket No. 36,044 was overturned on appeal; the case remains helpful for our purposes merely as a reflection of the Comptroller's previous interpretation of its rule. We are not bound by a decision of a district court but only by courts of superior jurisdiction. *See* 16 Tex. Jur. 3d *Courts* § 141 (1997).

GATX cites Docket No. 31,904 for the proposition that the installation of a stamping press at a facility was new construction because it added new footage to an existing structure. The decision does not support this view. The facts of that case established that to house new equipment, the taxpayer created a sixteen by sixteen foot concrete room, approximately ten feet below the ground floor of an existing building. The decision states that "*[t]his new room* constituted 'the addition of new footage to an existing structure.'" *Id.* (emphasis added). It was the new room, not the installation of new equipment, that constituted additional footage and hence met the definition of new construction. The additional footage of equipment and of the concrete slab on which it was mounted at the tank farm is distinguishable; it did not create additional space as did the underground room.

Another decision on which GATX relies is likewise distinguishable. *See id.* Docket No. 29, 296. There, an underground pit was dug so that a scale could be installed at the taxpayer's lime-mining site where no scale had previously existed. *Id.* The decision stated that

> the initial underground installation of the scale, here, constitutes "the addition of new footage to an existing structure." That is to say, just as the attic built onto the top of the flat-roofed structure created additional footage in Hearing #27,223, so also does this underground installation create new footage for the Petitioner's lime mining site—exactly as a new basement would do for a commercial building.

*Id.* Again, the facts of the decision can be distinguished: the pit, like the underground room, new basement, or new attic, constituted additional space to hold the scale. The Comptroller's decisions make clear that additional footage to an existing structure contemplates something more than the replacement or addition of equipment.

19

An appellant attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof at trial must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner*, 767 S.W.2d at 690; *Holley*, 629 S.W.2d at 696. GATX has not met its burden to show that the evidence conclusively established all vital facts in support of its contention that installation of the new vapor recovery system was new construction under Rule 3.357(8). *See Sterner*, 767 S.W.2d at 690. Therefore, we conclude that the trial court's failure to find that the installation constituted new construction is both legally and factually sufficient and appellant has failed to prove that the evidence is insufficient to support the court's affirmative finding to the contrary. Accordingly, we overrule appellant's second issue.

## CONCLUSION

Because the evidence is legally and factually sufficient to uphold the trial court's denial of the disputed claims for a refund of sales tax, we affirm the judgment.

___

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:  April 18, 2002

Publish

20