# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00801-CV

**DTWC Corporation, Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of The State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-06-004267, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

DTWC Corporation brought this tax-refund suit against the Comptroller of Public Accounts seeking to recoup sales taxes it paid on items such as soap, shampoo, conditioner, mouthwash, shower caps, pens, and notepads that it put in its hotel rooms for its hotel guests. On cross motions for summary judgment, the district court determined that the hotel consumables were not exempt from sales tax under the tax code's sale-for-resale exemption. We disagree and reverse the district court's judgment.

## BACKGROUND

The facts are undisputed, having been established below in a stipulation of facts. Appellant DTWC Corporation is the successor-in-interest to Red Lion Hotels, Inc., which operated a hotel in Austin, Texas during the tax period at issue in this case. Red Lion charged each of its hotel guests a set fee for overnight lodging. The overnight-lodging fee, which was subject to state and

local hotel-occupancy taxes, was based on factors such as the date of occupancy, the quality of the hotel property, the level of service provided, and the amenities available at the hotel. In exchange for the overnight-lodging fee, a Red Lion guest was given use of a hotel room and access to hotel facilities such as a pool or exercise room.

Red Lion stocked its hotel rooms with soaps, shampoos, conditioners, mouthwashes, shower caps, pens, notepads, and other similar non-reusable, consumable items ("hotel consumables") for use by its hotel guests. Before putting these items in the guest rooms, Red Lion stored the hotel consumables in a locked area on its hotel property. The hotel guests were free to use the hotel consumables in their rooms as they saw fit, including using the items, not using the items, or taking the items with them when they left the hotel. Guests who did not want or use the hotel consumables were not offered and did not receive a reduced rate for foregoing the use of those consumables.[1] After a guest checked out of the hotel, Red Lion would replace for the next guest those hotel consumables that had been taken or used by the prior guest.

DTWC sought a refund of the $17,485.53 in sales tax it paid on the hotel consumables it bought during the period December 1, 1998 through March 31, 2002, arguing that the hotel consumables were exempt under the tax code's sale-for-resale exemption. The Comptroller disputed that the exemption applied. In the district court, the parties filed cross motions for summary judgment on the issue of whether the sale-for-resale exemption applies to hotel consumables. The district court granted the Comptroller's summary-judgment motion and denied DTWC's. It is from this judgment that DTWC now appeals, asserting as its sole issue on appeal that it is entitled to a

---

[1] DTWC asserts that the cost of the hotel consumables is factored into the room rate, thus settling, at least on this record, the dilemma of whether it is okay to take these items home with you when you check out of your hotel room.

refund of the sales tax it paid on the purchases of the hotel consumables under a proper construction of the tax code's sale-for-resale exemption.

**STANDARD OF REVIEW**

Summary judgment is proper if the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). In our de novo review of a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004).

**DISCUSSION**

Because the basic facts of this case are not in dispute, our decision turns on the interplay of various provisions found in chapter 151 of the tax code.

- **Sales tax:** Section 151.051(a) imposes a sales tax "on each sale of a taxable item in this state." Tex. Tax Code Ann. § 151.051(a) (West 2008). "'Taxable item' means tangible personal property and taxable services." *Id.* § 151.010 (West 2008). The hotel consumables are "tangible personal property," a term that captures "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." *See id.* § 151.009 (West 2008).

- **Sale-for-resale exemption:** Provisions found in subchapter H set out numerous exemptions to the sales and use taxes imposed by chapter 151. Section 151.302(a) states: "The sale for resale of a taxable item is exempted from the taxes imposed by this chapter." *Id.* § 151.302(a). A "sale for resale" includes a sale of "tangible personal . . . property to a purchaser who acquires the property . . . for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired." *Id.* § 151.006(a)(1)

3

(West Supp. 2012). "Sale" and "purchase" are defined as, among other things, "a transfer of title or possession of tangible personal property" when "done or performed for consideration." *See id*. § 151.005(1) (West 2008).

Statutory construction is a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in construing statutes is to give effect to the Legislature's intent and, ordinarily, the truest manifestation of what lawmakers intended is what they enacted. *See First Am. Title Inc. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). The language emerging from the legislative process "constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Combs v. Roark Amusement & Vending, L.P.*, __S.W.3d__, No. 11-0261, 2013 WL 855737, at *2 (Tex. Mar. 8, 2013) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). We give such unambiguous statutes their plain meaning without resorting to rules of construction or extrinsic aids. *Id.* (citing *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010) (branding such reliance "improper," because "[w]hen a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language" (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008)))). On the other hand, "'[i]f a statute is vague or ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute.'" *Id.* (quoting *Texas Dep't of Ins. v. American Nat'l Ins. Co.*, __S.W.3d__, 2012 WL 1759457, at *8 (Tex. 2012)).

We agree with DTWC that under a plain-meaning review of the relevant statutes, it qualifies for a sales-tax exemption on the hotel consumables that Red Lion put in its hotel rooms for its guests. The hotel consumables were tangible personal property that Red Lion acquired to

4

put, in the form or condition in which Red Lion acquired them, in the hotel rooms for its guests to use, not use, or take. Red Lion's hotel guests paid a fee—i.e., consideration—to use a room and its amenities, including the hotel consumables. Red Lion acquired and transferred the hotel consumables to its hotel guests in the normal course of its business.

The Comptroller makes four arguments that are incompatible with the statutory text, and thus unpersuasive.

### 1. Purpose of the sale-for-resale exemption

The Comptroller emphasizes that the purpose of the sale-for-resale exemption is to make sure that the same goods are not twice subject to *sales tax*, such that "only the ultimate owner of the goods should be burdened by the sales tax." *See Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied) ("Retailers are allowed to purchase goods tax-free from wholesalers because the Tax Code recognizes that the consumer will ultimately *own and pay sales tax* on the goods purchased from the retailers."); *see also 7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 684 (Tex. App.—Austin 2010, pet. denied) (citing *Clearview Cable TV* for proposition that the "purpose of the sale-for-resale exemption is to prevent double taxation"). Under the facts of this case, the Comptroller points out, the tangible personal property at issue is not subject to a double *sales tax*, but rather one sales tax when the goods are bought and another tax, the hotel-occupancy tax, when a consumer pays to use a Red Lion hotel room. *See* Tex. Tax Code Ann. § 156.051(a) (West 2008) (imposing tax on "person who . . . pays for the use or possession . . . of a room . . . in a hotel"). In other words, this is not the typical situation where the taxable items are, in the absence of the sale-for-resale exemption, subject to sales tax when purchased by a retailer

5

and then again later when bought by the ultimate consumer. Therefore, the Comptroller argues, Red Lion's purchase of the hotel consumables should not be exempt. We disagree.

While the Comptroller is correct that the goods at issue here are not being taxed twice under the sales-tax provisions of chapter 151, we have recently explained that even if sales tax is not imposed on the ultimate sale or purchase, "we are nonetheless bound to apply the exemption the [L]egislature has written." *See Combs v. Health Care Servs. Corp.*, No. 03–09–00617–CV, 2011 WL 1005419, at *8 (Tex. App.—Austin Mar. 16, 2011, pet. granted) (mem. op.) (citing *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.—Austin 1996, writ denied)); *see also Day & Zimmermann, Inc. v. Calvert*, 519 S.W.2d 106, 110 (Tex. 1975) (applying sale-for-resale exemption even though ultimate "resale" of items came within another tax exemption). In other words, if the plain language of the sale-for-resale exemption applies to DTWC's purchase of hotel consumables, we must conclude that DTWC is entitled to the exemption regardless of whether sales tax was imposed on the ultimate consumer. *See Health Care Servs.*, 2011 WL 1005419 at *8 (applying plain language of sale-for-resale exemption although Legislature's general policy goals underlying the sale-for-resale exemption—i.e., to avoid pyramiding of sales tax on successive transactions preceding sale to the ultimate purchaser—were implicated); *see also First Am. Title*, 258 S.W.3d at 632 (noting that strict rules of construction for tax statutes apply only where statute at issue is ambiguous).

## 2. Consideration

The Comptroller also argues that DTWC's transfer of ownership of the hotel consumables to its guests was not a sale because the transfer lacked consideration. *See* Tex. Tax Code Ann. § 151.005 (requiring consideration to qualify as any type of sale or purchase under the

tax code). Specifically, the Comptroller asserts that because Red Lion's guests paid only for the overnight lodging, not the other incidentals associated with the room, the hotel consumables were gifts—i.e., transferred without consideration. *See Hilley v. Hilley*, 342 S.W.2d 565, 569 (Tex. 1961) ("A gift is a transfer of property made voluntarily and gratuitously."); *Teague v. Edwards*, 315 S.W.2d 950, 952 (Tex. 1958) (noting that gift or gratuitous service lacks consideration because there is no corresponding promise to pay for the item or service). But the Comptroller's argument here is belied by the parties' stipulation that Red Lion "charged its overnight guests one fee for overnight lodging," which was "all-encompassing and included the use of a guest room, the use of the hotel property (including some or all of the hotels amenities, such as pool or exercise facility, and use of any in-room amenities including the Hotel Consumables)." Stated another way, the parties stipulated that Red Lion's guests paid for the hotel consumables when they paid for the use of the hotel room. Accordingly, ownership of the hotel consumables was transferred with consideration in the form of the overnight-lodging fee.

The Comptroller suggests that our decision in *Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 572 (Tex. App.—Austin 1990, no writ), compels us to reject Red Lion's argument that the consideration for the hotel consumables is included in the overnight-lodging price. We disagree. In *Southwest Airlines*, we addressed, among other issues, whether the plastic cups Southwest Airlines used to serve non-alcoholic drinks to its passengers were exempt from sales tax. *See id.* at 571–72. Southwest argued, in part, that it fell under a Comptroller rule that allowed "food service operators" to buy tax free its non-food items that were furnished to customers with food or drinks, such as paper plates and disposable cups. *See id.* (citing 34 Tex. Admin. Code § 3.293(c)(2)

7

(1982)[2]).  We concluded that Southwest Airlines did not fall under this rule, principally on our determination that the phrase "food service operator" "logically implies something more than the distribution to its customers of complimentary food and drinks."  *Id.* at 572.  We also noted the Comptroller's long practice of interpreting rule 3.293 "as providing an exemption only to those in the business of *selling* food."  *Id.*  Southwest Airlines countered that, because the cost of the cups was ultimately reflected in the price of each ticket, its distribution of cups to passengers was, in fact, a "sale," making Southwest Airlines a food service operator.  Because we were "not persuaded that a theoretical increase in the ticket price can be said to convert a complimentary offer of a beverage into a sale, and such a 'sale' to convert an air carrier into a food service operator," we rejected that argument.  *Id.*

But in the present case, DTWC and the Comptroller stipulated that the overnight-lodging fee actually included use of the hotel consumables—whereas in *Southwest Airlines* the increase in price was only theoretical.  *See id.* at 572.  For that reason alone, *Southwest Airlines* does not preclude us from acknowledging the parties' stipulation that the hotel guest's overnight-lodging fee included use of the hotel consumables—i.e., consideration for those items.  Further, even in the absence of the parties' stipulations, the undisputed summary-judgment evidence established that the

---

[2] The full version of the rule cited in *Southwest Airlines* provides—

> Operators of eating establishments, caterers, and other food service operators may purchase on resale or exemption certificates those items which are furnished to their customers with the food or beverage; these items must be of a non-reusable nature or qualify for exemption as wrapping or packaging materials.  Examples of such items shall include nonreusable paper, wooden, plastic, and aluminum articles. Other items included are . . . cups (paper, plastic, or styrofoam), . . . .

*See Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 572 (Tex. App.—Austin 1990, no writ).

cost of the hotel consumables represented 2% of the room rate charged to hotel guests and was a factor in setting the room rate. Thus, the guest's payment of the overnight-lodging fee constituted consideration for the hotel consumables.

### 3.    Normal course of business

The Comptroller argues that DTWC is not entitled to the sale-for-resale exemption because Red Lion is not in the business of selling the hotel consumables. *See* Tex. Tax Code Ann. § 151.006(a) ("sale-for-resale" requires purchase and resale in the normal course of business). But the sale-for-resale exemption does not require that Red Lion be in the business of selling hotel consumables to qualify for the exemption. Rather, the tax code requires that the hotel consumables have been bought and resold "in the normal course of [Red Lion's] business." *See id.* Here, as the Comptroller acknowledges, Red Lion's business is to provide its guests with a certain type or level of overnight sleeping accommodations. To provide its guests with the type of overnight lodging it advertised and charged for, or at the very least the type of overnight lodging that consumers demand, Red Lion bought certain taxable items—i.e., the hotel consumables—that it decided its guests would want in its rooms and put those items in the rooms for the guests to use or not use as they saw fit. Further, it charged its guests for those items as part of the overnight-lodging fee for each room. Thus, part of Red Lion's business is to provide these consumable items to its hotel guests.

The Comptroller again urges that previous opinions from this Court preclude us from holding that Red Lion transferred the hotel consumables in the normal course of its business. Specifically, the Comptroller argues that Red Lion's "provision of complimentary shampoo in its hotel rooms does not convert it into a reseller of shampoo," relying on our holdings in *Southwest Airlines*, 784 S.W.2d at 572, and *Delta Airlines, Inc. v. Combs*, 318 S.W.3d 523, 525

9

(Tex. App.—Austin 2010, no pet.). But in *Southwest Airlines*, also discussed above, we interpreted a specific Comptroller regulation using the phrase "food service operator" to hold that an airline does not become a "food service operator" simply by distributing complimentary food and drinks to its customers. *See Southwest Airlines*, 784 S.W.2d at 572. That opinion did not, however, interpret section 151.006's requirement that the purchase and resale occur in the normal course of business. Section 151.006 does not require that the purchaser of the items be in the business of selling those certain items; rather, it simply requires that the purchase and resale be in the normal course of the purchaser's business. *See* Tex. Tax Code Ann. § 151.006(a)(1). And in *Delta Airlines*, although we were interpreting the sale-for-resale exemption, we held that Delta's purchase of janitorial services was not done to resell them to the airport because Delta was fulfilling a contractual obligation to keep the leased airport premises clean; thus the airport was not "purchasing or acquiring" janitorial services from Delta. *See Delta Airlines*, 318 S.W.2d at 525. Notably, we did not discuss whether the provision of those janitorial services was in the normal course of Delta's business. *See id.*

### 4. Applicability of use tax

Finally, the Comptroller argues that even if the sale-for-resale exemption applies here, Red Lion's use of the hotel consumables as marketing tools—each consumable item had the hotel's name and logo printed on it—subjects the items to the tax code's use tax. The Comptroller urges further that Red Lion is liable for at least some tax under section 151.154(a) because that provision requires a purchaser who "makes any use of the taxable item other than retention, demonstration, or display while holding it for sale" to pay tax "on the value of the taxable item for any period during which the taxable item" was used for other than retention, demonstration or display. *See* Tex. Tax Code Ann. § 151.154(a) (West 2008); *see also id.* § 151.011(a) (West 2008) (defining "use" as

10

"the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property"). We disagree. The stipulated facts show that Red Lion stored the hotel consumables in a locked storeroom until they were put in the guest rooms to be used on an as-needed basis by its guests who had, by the time they entered the room, already agreed to stay at the hotel. In other words, while the consumables belonged to Red Lion, they were not used for any purpose other than to stock the hotel rooms for the convenience of hotel guests.

## CONCLUSION

Because we determine that DTWC is entitled to the sale-for-resale exemption for the hotel consumables, we reverse the district court's order granting summary judgment in favor of the Comptroller and render judgment that DTWC recover the sales taxes in controversy in the amount of $17,485.53 plus interest.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Reversed and Rendered

Filed: April 11, 2013

11