# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00121-CV

---

**Appellants, Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas// Cross-Appellant, Gold's Texas Holdings Group**

**v.**

**Appellee, Gold's Texas Holdings Group// Cross-Appellees, Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-002960, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## O P I N I O N

In this suit for a refund under the "Sales for Resale" exemption in section 151.302 of the Tax Code, the Comptroller of Public Accounts and the Attorney General (collectively, "the Comptroller") appeal a portion of the district court's judgment awarding a refund, plus interest, to Gold's Texas Holdings Group ("Gold's"). Gold's cross appeals, challenging the portion of the judgment partially denying its refund claim. We will affirm in part and reverse in part.

## BACKGROUND

Gold's owns and operates health clubs in Texas that sell memberships subject to a Membership Agreement. The Membership Agreement provides that Gold's may change its

hours of operation and add or eliminate locations or facilities at any time and within its sole discretion. It further provides that Gold's "is not required to continue any particular programs, facilities, services, or equipment" and "may discontinue, change, or modify the same in its sole and absolute discretion." Gold's additionally "reserves the right to add, eliminate, or alter any program, equipment, furniture or fixture when deemed necessary or desirable in its sole discretion," and membership "does not confer on Member any ownership interest in Gold's Gym or any of its property." The Membership Agreement requires members to adhere to Gold's rules for using any equipment, and those rules may "be modified, amended, or supplemented" "from time to time in [Gold's] sole discretion." Gold's may cancel a member's membership for breach of the rules or for "generally undesirable behavior." Members are liable to Gold's for any damage to equipment. Gold's rules include provisions that prohibit dropping weights, making excessive noise while lifting, and leaning weights or bars on the walls or other equipment. The rules prohibit the use of chalk. Under the rules, members may not conduct or participate in freelance personal training.

Gold's purchased items for its health clubs on which it paid sales and use tax. The parties and district court divided the items into three categories: large equipment, small equipment, and locker room supplies. Large equipment included abdominal machines, body composition analyzers, cardio machines, fitness mats, furniture, steps and Pilates equipment, arm related strength equipment, leg related strength equipment, locker room equipment, equipment parts and repairs, spa and pool tools, advertising materials, and entertainment costs. Small equipment included fitness balls, kids' club supplies, free weights, and kickboxing equipment. Locker room supplies included bath towels, paper towels, toilet paper, hair and body wash, and bathroom cleaner. Contending that all of these items qualify for the sale-for-resale exemption,

2

Gold's sued under chapters 112 and 151 of the Tax Code for a refund of $784,297.44 in sales and use tax, plus interest, for the period from July 1, 2007, through August 31, 2010.[1] After a bench trial, the district court concluded that Gold's was entitled to a refund of $87,641.37, plus interest, based on the conclusion that the locker room supplies and small equipment qualified for the sale-for-resale exemption. The district court denied the claim as to the large equipment. On appeal, the Comptroller challenges the portion of the judgment allowing the exemption for the small equipment, and Gold's challenges the portion of the judgment disallowing the exemption on the large equipment. Neither party challenges the district court's judgment regarding the locker room supplies.

## ANALYSIS

Our decision requires us to construe various provisions of chapter 151 of the Tax Code. "When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (citing *First Am. Title Ins. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)). "This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). "We give such statutes their plain meaning without resort to rules of construction or extrinsic aids." *Id.* (citing *Texas Lottery Comm'n v. First State Bank*

---

[1] In 2007, 2011, 2015, and 2019, the legislature amended several provisions of chapter 151 of the Tax Code. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1266, 2007 Tex. Gen. Laws 4239; Act of June 28, 2011, 82d Leg., 1st C.S., ch. 4, 2011 Tex. Gen. Laws 5254; Act of May 21, 2015, 84th Leg., R.S., ch. 426, 2015 Tex. Gen. Laws 1675; Act of May 21, 2019, 86th Leg., R.S., ch. 638, 2019 Tex. Gen. Laws__. Unless otherwise indicated, we cite to the provisions in effect during the tax period in question.

*of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010)). "On the other hand, '[i]f a statute is vague or ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute.'" *Id.* (quoting *Texas Dep't of Ins. v. American Nat'l Ins.*, 410 S.W.3d 843, 853 (Tex. 2012)).

Section 151.051(a) imposes a sales tax "on each sale of a taxable item in this state." Tex. Tax Code § 151.051(a). "'Taxable item' means tangible personal property and taxable services." *Id.* § 151.010. The parties do not dispute that the gym items are "tangible personal property." *See id.* § 151.009 (defining tangible personal property as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner"). A "taxable service" refers to services enumerated in section 151.0101, including "amusement services." *Id.* § 151.0028. As this Court determined in *Fitness International, LLC v. Hegar*, operation of health clubs constitutes the provision of taxable "amusement services" as that term is defined in the Tax Code and the Comptroller's rules. No. 03-15-00534-CV, 2016 Tex. App. LEXIS 6337, at *3 (Tex. App.—Austin June 16, 2016, pet. denied) (mem. op.); *see* Tex. Tax Code §§ 151.0028(a), (b) (providing that "amusement services" means "the provision of amusement, entertainment, or recreation" and "includes membership in a private club or organization that provides entertainment, recreational, sports, dining, or social facilities to its members"), .0101(a)(1), (b) (providing definition of "taxable services" under chapter 151 includes "amusement services" and that Comptroller has "exclusive jurisdiction" to interpret definition of "taxable services" under subsection (a)); 34 Tex. Admin. Code § 3.298(a)(1)(D) (Comptroller of Pub. Accounts, Amusement Services) (noting that "amusement services" include physical fitness centers).

The legislature has provided several exemptions from the sales and use tax, including the sale-for-resale exemption: "The sale for resale of a taxable item is exempted from the taxes imposed by this chapter." Tex. Tax Code § 151.302(a). However, "[t]angible personal property used to perform a taxable service is not considered resold unless the care, custody, and control of the tangible personal property is transferred to the purchaser of the service." *Id.* § 151.302(b). Section 151.006(a)(3) provides that a sale for resale includes a sale of "tangible personal property to a purchaser who acquires the property for the purpose of transferring it . . . as an integral part of a taxable service." *Id.* § 151.006(a)(3). "Tax exemptions are narrowly construed and the taxpayer has the burden to 'clearly show' that an exemption applies." *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016) (quoting *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979) (stating "all doubts are resolved in favor of taxing authority")).

The Tax Code defines "'sale' or 'purchase'" as "a transfer of title or possession of tangible personal property" "when done or performed for consideration." Tex. Tax Code § 151.005. "Transfer" is not defined in the Tax Code, but this Court has determined that "transfer" means "to make over or negotiate the possession or control of (a right, title, or property) by a legal process usually for a consideration: convey." *Fitness*, 2016 Tex. App. LEXIS 6337, at *7 (relying on definition of "transfer" in *Webster's Third New Int'l Dictionary* 2426-27 (2002) to hold that health club's purchase of exercise equipment did not qualify for sale-for-resale exemption because health club did not resell or transfer the exercise equipment to its members each time those customers used the equipment). Therefore, under section 151.302(a), Gold's is entitled to the sale-for-resale exemption if it gave "possession or control of [the equipment at issue to members] by a legal process."

5

**Large Equipment**

Gold's argues the district court erred in disallowing the exemption on large items because (1) Gold's purchased the large equipment for members' use and transferred possession to members, and the district court erred in making contrary findings and conclusions, (2) the district court erred in finding that Gold's is the consumer of the large equipment, and (3) the district court erred in determining that Gold's was required, but failed, to establish that Gold's transferred care, custody, and control of the large equipment because Gold's did not "perform" a service.

As the parties acknowledge, this Court addressed whether the sale-for-resale exemption applies to "large equipment" in *Fitness*, 2016 Tex. App. LEXIS 6337. In *Fitness*, we considered whether the exemption applied to "cardio machines, abdominal machines, stretch machines, arm/shoulder equipment, leg equipment, weight racks, scales, and promotional flyers," which are similar or identical to the large equipment now before us. *See id.* at *4. This Court determined that "there can be no reasonable conclusion" that Fitness had purchased the equipment for resale or transfer*, id.* at *8, stating:

> The Membership Agreements cannot reasonably be construed as leases or rental agreements, nor can Fitness's making the equipment available to members for use while at the gyms be construed as "transferring possession," despite its witness's testimony that a member is in "control" of particular equipment while using it by, for example, adjusting the amount of weight on a machine. Rather, Fitness retains superior legal possession of the items and merely provides access to and use of its facilities—including whatever exercise equipment may or may not be on site and functioning at any given time—under terms and conditions completely within its own discretion for a specified monthly fee.

*Id.* at *9-10. Just as Fitness provided access to equipment under its membership agreement, Gold's provides access, pursuant to its membership agreement and rules, to its large equipment

6

while retaining superior legal possession under terms and conditions completely within its own discretion. *Cf. CEC Entm't, Inc. v. Hegar*, No. 03-18-00375-CV, 2019 Tex. App. LEXIS 10479, at *7 (Tex. App.—Austin Dec. 5, 2019, no pet. h.) (mem. op.) ("[W]hat customers get when they insert a coin or token in CEC's coin-operated gaming machines is not possession or control of the equipment, but limited access to enjoy the games or rides offered on the equipment."). A witness for Gold's testified that Gold's maintains and repairs the equipment. Although members are asked to wipe down equipment as a matter of "etiquette," Gold's employs housekeepers to clean the gym, including the equipment. Further, Gold's unilaterally sets its hours of operation and decides what equipment to include in or retire from its gyms at any given time.

Gold's argues that a 1979 decision by the Comptroller in a case involving the rental of bowling shoes supports its contention that the large equipment should be exempt. In that decision, the Comptroller determined that charging patrons to use tangible personal property (bowling shoes) constituted a rental rather than provision of a service and thus was a taxable sale. *See* Comptroller Decision No. 10,807, Tex. (Dec. 12, 1979). The Decision did not address the sale-for-resale exemption, nor did it address whether bowling shoe rentals are a "transfer" under the Tax Code. *See CEC Entm't*, 2019 Tex. App. LEXIS 10479, at *9. In addressing the sale-for-resale exemption here, we base our determination on the conclusion that, under the membership agreement and Gold's rules and practices, members have access to large equipment, but do not exercise control over it sufficient to constitute a "transfer" under section 151.006.

Gold's also relies on a 1994 Comptroller letter ruling regarding the applicability of the sale-for-resale exemption to bowling balls and other bowling equipment. *See* Comptroller Letter Ruling No. 9411681L (Nov. 3, 1994). The letter ruling stated that "[c]are, custody and control of bowling balls, shoes, recap sheets and score sheets is transferred to the bowler," such

that a bowling center could purchase these items tax-free. *Id.* In this case, the Comptroller posited at trial that the letter ruling "was just wrong" and noted that it has been superseded by later decisions of the Comptroller. *See* Comptroller Decision No. 201705033H (May 8, 2017) (stating that the letter ruling "provides no analysis supporting Staff's determination"). We find the Comptroller's 1994 letter ruling unpersuasive. For the reasons explained above, Gold's members do not have care, custody, and control over the large equipment. Rather than transferring the large equipment, Gold's granted its members access under the terms of the membership agreement and Gold's rules.

Based on the language of the statute and this record, Gold's did not clearly show that it transferred possession or control of the large equipment to its members as required by section 151.006. Therefore, the district court did not err in determining that Gold's was not entitled to the sale-for-resale exemption. Having determined that Gold's did not clearly show it qualified for the exemption based on section 151.006, we need not address its remaining arguments relating to the large equipment.

**Small Equipment**

We determine the exemption's applicability to the small equipment using the same reasoning that applies to the large equipment. The Comptroller argues the district court erred in concluding the sale-for-resale exemption applied to Gold's purchases of the small equipment for three reasons: (1) Gold's is the statutorily designated consumer of the equipment under section 151.058(a) of the Tax Code, (2) Gold's did not transfer the small equipment to its members as required by section 151.006(a), and (3) under section 151.302(b), Gold's did not transfer care, custody, and control of the small equipment to its members. Because it is

8

dispositive, we will address only the issue of whether Gold's transferred the small equipment to its members under section 151.006.

This Court has acknowledged that "the purpose of the sale-for-resale exemption is to make sure that the same goods are not twice subject to sales tax, such that 'only the ultimate owner of the goods should be burdened by the sales tax.'" *DTWC Corp. v. Combs*, 400 S.W.3d 149, 153 (Tex. App.—Austin 2013, no pet.) (quoting *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied)). Accordingly, we have previously held that the purchase of hotel consumables qualified for the sale-for-resale exemption because hotel guests paid a fee for overnight lodging, after which they were "free to use the hotel consumables in their rooms as they saw fit, including using the items, not using the items, or taking the items with them when they left the hotel." *Id.* at 151, 154-156. Our reasoning in *DTWC* is consistent with our reasoning in *Fitness*. In each case, we determined whether the patrons had "control" or "possession" over the items at issue or whether they were merely granted access to the items. Here, most of what the parties refer to as small equipment, such as the fitness balls, free weights, and kickboxing equipment is subject to the same restrictions as large equipment—members may use the items inside the health club subject to Gold's membership agreement and rules. In addition, Gold's rules provide a greater number of express restrictions for some small equipment: members are prohibited from dropping weights, from leaning weights or bars on walls, and from using chalk. Members are asked to return weights to the proper racks. Gold's may terminate membership if a member violates the rules. Notably, members are not permitted to remove these items of small equipment from Gold's premises. Although members have access to these items and may use them for a range of fitness activities, Gold's "retains superior legal possession of the items." *See Fitness*, 2016 Tex. App. LEXIS 6337, at *9-10. We therefore conclude that, as

9

with the large equipment, Gold's did not clearly show that it transferred possession or control of the fitness balls, free weights, and kickboxing equipment to its members as required by section 151.006.

**Consumable Supplies**

In addition to fitness balls, free weights, and kickboxing equipment, the district court permitted the exemption for "kids club supplies." Some of these supplies were identified as stickers and crayons, which, according to the record, members' children are free to take with them upon leaving the gym's kid's club. Thus, like hotel consumables in *DTWC*, the stickers and crayons were acquired and transferred to customers in the normal course of business, and the district court therefore correctly determined that these items qualified for the sale-for-resale exemption. *See DTWC*, 400 S.W.3d at 152-53 ("Red Lion acquired and transferred the hotel consumables to its hotel guests in the normal course of its business."). However, the record also contains a category of "kids club supplies" purchased from the vendor Gordon W. Webb for which there is no further description. A Gold's witness testified that kids club supplies might include items that are "consumable in many cases or not consumable, depending on which piece of equipment—which thing we're talking about." Because the nature of the unspecified kids club supplies is not identified in the record, we conclude that Gold's did not clearly show that it transferred possession or control of these unknown items, and we are unable to analyze them under other provisions of chapter 151. In sum, Gold's transferred possession and control of the stickers and crayons available in the kid's club, but did not meet its burden to clearly show that it transferred possession or control of the rest of the small equipment.

10

**CONCLUSION**

Accordingly, we affirm the judgment as it relates to the large equipment and the stickers and crayons purchased for the kid's club. We reverse the district court's judgment as it relates to the remainder of the small equipment.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed in part and reversed in part

Filed: February 28, 2020