# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.  03-21-00035-CV

**Cheddar's Casual Café, Inc., Appellant**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of The State of Texas; and
Ken Paxton, Attorney General of The State of Texas, Appellees**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-006943, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

## O P I N I O N

Cheddar's Causal Café, Inc. (Cheddar's) appeals the trial court's final judgment denying its refund claim for alleged overpayment of sales taxes for certain items purchased for use in its restaurants.  Cheddar's had claimed its refund entitlement under the "Sale for Resale" exemption in section 151.302 of the Texas Tax Code.  *See* Tex. Tax Code § 151.302(a) ("The sale for resale of a taxable item is exempted from the taxes imposed by this chapter."); *see also id.* § 151.006 (defining "sale for resale").  Cheddar's also challenged the validity of one of the Comptroller's rules related to the sale-for-resale exemption.  *See* 34 Tex. Admin. Code § 3.293(h)(5) (Comptroller of Pub. Accounts, Food; Food Products; Meals; Food Service).  After a bench trial, the trial court rendered a final judgment disallowing the exemption and denying the rule challenge.  Cheddar's contends that the trial court erred in disallowing the exemption and denying the rule challenge.  We will affirm the trial court's final judgment.

## BACKGROUND[1]

Cheddar's operated as a casual restaurant. When Cheddar's served its dine-in customers, it provided them with dishes, glasses, and utensils—items the parties refer to as "smallwares"—for use within the restaurant premises while eating. Cheddar's reused the smallwares for future dine-in customers and for training its personnel on the menu items. After customer dining, Cheddar's personnel sorted, cleaned, sanitized, re-sorted, dried, and staged the smallwares to be reused by subsequent dine-in customers. Cheddar's waitstaff returned used bar glasses to the bar for cleaning and reuse and used new clean glasses for customers who requested refills. Although Cheddar's did not tell its customers that they could take the smallwares from the restaurant premises, there were instances in which customers stole the smallwares.

Contending that the smallwares qualify for the sale-for-resale exemption, Cheddar's sued under chapters 112 and 151 of the Tax Code for a refund of $265,937.86 in sales and use tax, plus interest, for the period from January 1, 2010 through July 31, 2013.[2] Cheddar's also brought a challenge to the validity of administrative rule 3.293(h)(5), which provides that "items must not be reusable by the seller to qualify for the sale for resale exemption." *See* Tex. Gov't Code § 2001.038 (providing that validity or applicability of rule

---

[1] The facts recited in this section are drawn from unchallenged trial court findings of fact. *See Trevino v. Munoz*, 583 S.W.2d 840, 843 (Tex. App.—San Antonio 1979, no writ) (holding that when appellant does not challenge sufficiency of evidence to support trial court's findings of fact, appellate court will accept findings as correct recitation of facts).

[2] In 2011, 2015, 2019, and 2021 the legislature amended several provisions of chapter 151 of the Tax Code. *See* Act of June 28, 2011, 82d Leg., 1st C.S., ch. 4, § 12, 2011 Tex. Gen. Laws 5254; Act of May 21, 2015, 84th Leg., R.S., ch. 426, 2015 Tex. Gen. Laws 1675; Act of May 21, 2019, 86th Leg., R.S., ch. 638, §3, 2019 Tex. Gen. Laws 1876, 1876–77; Act of May 24, 2021, 87th R.S., ch. 401, § 2, 2021 Tex. Gen. Laws 795, 796. Unless otherwise indicated, we cite to the provisions in effect during the tax period in question.

may be determined in declaratory judgment action); 34 Tex. Admin. Code § 3.293(h)(5). After a bench trial, the district court concluded that Cheddar's was not entitled to a refund of sales and use tax on the smallwares and that Comptroller rule 3.293(h)(5) is a valid rule. Cheddar's then perfected this appeal.

## DISCUSSION

Our decision requires us to construe various provisions of chapter 151 of the Tax Code. "When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (citing *First Am. Title Ins. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)). "This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). "We give such statutes their plain meaning without resort to rules of construction or extrinsic aids." *Id.* (citing *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010)). "On the other hand, '[i]f a statute is vague or ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute.'" *Id.* (quoting *Texas Dep't of Ins. v. American Nat'l Ins.*, 410 S.W.3d 843, 853 (Tex. 2012)).

Subsection 151.051(a) imposes a sales tax "on each sale of a taxable item in this state." Tex. Tax Code § 151.051(a). "'Taxable item' means tangible personal property and taxable services." *Id.* § 151.010. The smallwares at issue in this case are undisputedly "tangible personal property." *See id.* § 151.009 (defining tangible personal property as "personal property

3

that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner"). The legislature has provided several exemptions from the sales and use tax, including the sale-for-resale exemption: "The sale for resale of a taxable item is exempted from the taxes imposed by this chapter." *Id.* § 151.302(a). "Sale for resale" includes, relevant here, the sale of tangible personal property to a purchaser who acquires the property for the purpose of reselling it (1) with or as a taxable item in the form or condition in which it was acquired or (2) as an attachment to or integral part of other tangible personal property. *Id.* § 151.006(a)(1). "Tax exemptions are narrowly construed and the taxpayer has the burden to 'clearly show' that an exemption applies." *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016) (quoting *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979) (stating "all doubts are resolved in favor of the taxing authority")).

The Tax Code does not define "resell," but it does define "sale or purchase," relevant here, as:

- a transfer of title or possession of tangible personal property, *see* Tex. Tax Code § 151.005(1); or

- the furnishing, preparation, or service of food, meals, or drinks, *see id.* § 151.005(6).

Cheddar's argues that it is entitled to the sale-for-resale exemption under subsection 151.302(a) for two reasons. First, Cheddar's maintains that it transferred possession of the smallwares to its dine-in customers, which constitutes a "sale" by virtue of the definition of sale found in subsection 151.005(1). Second, Cheddar's contends that its furnishing meals to dine-in customers constitutes a sale of the smallwares by virtue of the definition "sale" found in subsection 151.005(6). We consider each argument in turn.

4

*Did Cheddar's transfer possession of the smallwares to its dine-in customers?*

The Tax Code also does not define "transfer" or "possession" and we therefore give the words their plain and common meaning. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). This Court has determined that the plain and common meaning of "transfer" is "to make over or negotiate the possession or control of (a right, title, or property) by a legal process usually for a consideration; convey." *Fitness Int'l, LLC v. Hegar*, No. 03-15-00534-CV, 2016 WL 3391606, at *3 (Tex. App.—Austin June 16, 2016, pet. denied) (mem. op.) (citing Webster's Third New Int'l Dictionary 2426-27 (2002)). This Court has also determined that the plain and common meaning of "possession" is "'the act or condition of having in or taking into one's control or holding at one's disposal' and 'actual physical control or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has a legal right to assert interests in the property against all others having no better right than himself.'" *Id.* (quoting Webster's Third New Int'l Dictionary 1770 (2002)). Therefore, under subsection 151.302(a), Cheddar's is entitled to the sale-for-resale exemption if it gave "possession or control of [the smallwares at issue to dine-in customers] by a legal process" and the dine-in customers had control of the smallwares or held them at their disposal with a "legal right to assert interests in [the smallwares] against all others." *See id.*. Based on these definitions and this record, there can be no reasonable conclusion that Cheddar's purchased the smallwares for the purpose of reselling them by transferring legal possession of them to its dine-in customers so as to make the dine-in customers' rights equal or superior to Cheddar's rights or so that they could hold the smallwares at their disposal.

The trial court found that Cheddar's provided the smallwares to dine-in customers for use within the restaurant premises while eating and, after use, sorted, cleaned, sanitized, re-

sorted, dried, and staged the smallwares for reuse by the next dine-in customer. Cheddar's did not hold or secure any smallwares for dine-in customers who left them at the table after dining and did not encourage dine-in customers to take the smallwares with them when they left the restaurant, although there were "instances where smallwares were stolen." Although Cheddar's asserts that the dine-in customers could do as they wished with the smallwares while dining, that demonstrates at most that the dine-in customers had "possession" while they were eating, not that Cheddar's "transferred" possession of the smallwares to the dine-in customers. The fact that the customers were not expected or even permitted to take the smallwares with them after eating evidences that possession of the smallwares was not "transferred" to them. *See id.* (holding that although gym members had "control" of particular equipment while using it, Fitness retained superior legal possession of equipment and merely provided access to and use of equipment under terms and conditions within its own discretion and therefore did not "transfer" or "resell" equipment). Cheddar's at all times retained superior legal possession of the smallwares and merely provided access to and use of the smallwares to the dine-in customers while eating. *See Hegar v. Gold's Texas Holdings Grp.*, 598 S.W.3d 730, 734 (Tex. App.—Austin 2020, pet. denied) (holding that no "transfer" took place when Gold's provided access to its equipment pursuant to its membership agreement and rules while retaining superior legal possession under terms and conditions completely within its own discretion).

This Court has acknowledged that "the purpose of the sale-for-resale exemption is to make sure that the same goods are not twice subject to sales tax, such that 'only the ultimate owner of the goods should be burdened by the sales tax.'" *DTWC Corp. v. Combs*, 400 S.W.3d 149, 153 (Tex. App.—Austin 2013, no pet.) (quoting *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied)). Accordingly, we have

6

previously held that hotel consumables qualified for the sale-for-resale exemption because hotel guests paid a fee for overnight lodging, after which they were "free to use the hotel consumables in their rooms as they saw fit, including using the items, not using the items, or taking the items with them when they left the hotel." *Id.* at 151, 154-56. Similarly, in *Gold's Texas Holdings Group*, we considered whether a health club transferred possession of small fitness equipment to members who could use them inside the health club subject to health club rules but were prohibited from removing them from the club. We concluded that "[a]lthough members have access to these items and may use them for a range of fitness activities, Gold's 'retains superior legal possession of the items'" and that Gold's failed to "clearly show that it transferred possession or control" of the equipment to its members as required by section 151.006. *Gold Texas Holdings Grp.*, 598 S.W.3d at 736 (quoting *Fitness Int'l*, 2016 WL 3391606, at *3); *see also CEC Entm't, Inc. v. Hegar*, No. 03-18-00375-CV, 2019 WL 6603165, at *3 (Tex. App.—Austin Dec. 5, 2019, pet. denied) (mem. op.) ("[O]ur holding is based on the fact that CEC does not "transfer"—i.e., give possession or control of—the coin operated gaming equipment to its customers because the customers only have access to use of the games or rides provided by the equipment under CEC's conditions and parameters."). Here, although dine-in customers had access to and could use the smallwares while eating, like the gym equipment, the dine-in customers were not permitted to take the smallwares with them when they left the restaurant and, although they could use them while eating consistent with Cheddar's business model, the dine-in customers did not gain superior legal possession of the smallwares. Cheddar's failed to clearly show that it transferred possession or control over the smallwares sufficient to constitute a "transfer" under subsection 151.005(1) and thus Cheddar's provision of the smallwares to its dine-in customers does not constitute a "sale" for purposes of the sale-for-resale exemption.

7

*See* Tex. Tax Code § 151.006(a)(1) ("sale for resale" means property acquired for purpose of reselling it).[3]

Cheddar's argues that our construction of the term "transfer" should be guided by the economic realities of a restaurant business and that the economic reality here is that "the customers purchased the meals with the expectation that [Cheddar's] would provide the items necessary to eat the food." Thus, Cheddar's maintains, its purchase of the smallwares qualifies for the sale-for-resale exemption because we must construe the "transfer" requirement in the context of Cheddar's business model. The economic reality doctrine, however, simply provides that "in the area of tax law, like other areas of economic regulation, a plain-meaning determination should not disregard the economic reality underlying the transaction in issue." *Roark Amusement & Vending L.P.,* 422 S.W.3d at 637. The reality underlying the transactions at issue here, whether economic or otherwise, is that Cheddar's did not "transfer" its smallwares to the customers who used them to eat a meal they paid for; it simply allowed them access to and use of, on Cheddar's terms, the smallwares while they consumed a dine-in meal.

---

[3]    Because we conclude that Cheddar's provision of the smallwares to its dine-in customers for use while eating did not constitute a transfer of possession, or "sale," of the smallwares for purposes of the sale-for-resale exemption, we need not address its argument that the smallwares are "an attachment to or integral part of" other tangible personal property sold such that their purchase of the smallwares qualifies as an exempt sale-for-resale. Subsection 151.006(a)(1) provides that a "sale for resale" occurs when a purchaser acquires the property for the purpose of "reselling" it either in the form acquired or as an attachment to or integral part of other tangible personal property. Both of these components require that the purpose be to "resell" the property. Having concluded that Cheddar's did not acquire the smallwares for the purpose of transferring possession of them, i.e., selling them, it is immaterial whether the smallwares were a necessary tool to complete the sale of the food items served using them. Moreover, the fact that the smallwares were returned and reused for subsequent dine-in customers, rather than consumed or retained by the dine-in customer, belies Cheddar's claim that the smallwares were an "attachment to" or "integral part" of the food items sold. While the smallwares could be considered an integral part of the *service* of the food items, they are not an integral *part of* or an *attachment to* the food items themselves.

8

*Did Cheddar's furnishing meals to dine-in customers constitute a "sale" of the smallwares?*

The Tax Code includes in its definition of "sale" "the furnishing, preparation, or service of food, meals, or drinks." Tex. Tax Code § 151.005(6). Cheddar's argues that because, in its view, the term "meal" includes the smallwares in addition to the food the dine-in customer consumed, the furnishing of a "meal" to a dine-in customer constituted a sale of the smallwares. The linchpin of this argument is that the term "meal" refers not just to consumable food items, but also to the utensils—the smallwares—used to serve the food items. In support of its argument, Cheddar's relies on the following dictionary definition of "meal": "[t]he food served and eaten in one sitting." *See* American Heritage Dictionary 1088 (5th ed. 2011). For its part, the Comptroller maintains that the smallwares are not included in the term "meal," relying on a different dictionary definition of "meal": "1. an act or the time of eating a portion of food to satisfy appetite 2. the portion of food eaten at a meal." *See* Merriam-Webster Dictionary www.merriam-webster.com/dictionary/meal. Thus, reading the first and second definitions together, this dictionary defines "meal" as both the time or act of eating a portion of food to satisfy an appetite and the actual food consumed to satisfy the appetite. The Comptroller asserts that in the context of the statute, the correct definition of "meal" is the latter; i.e., the food consumed to satisfy the appetite. This definition is consistent with the one sponsored by Cheddar's; i.e., food served and eaten in one sitting.

Cheddar's, however, argues that the "meal" includes not just the food eaten in one sitting, but also the items used to serve that food. Cheddar's supports this argument by first stating that "meal" must include the serving utensils because the statute uses both the terms "food" and "meal," indicating that "food" and "meal" are not the same thing. Cheddar's reasons

9

that because the statute uses both the term "meal" and "food," "meal" cannot be equivalent to "food."  Cheddar's argues that the term "meal" includes "matters outside the confines of food," and those matters are the smallwares.  *See Southwest Royalties, Inc.* 500 S.W.3d at 402 (interpreting statute that included terms "manufacturing, processing, or fabrication" and determining that, while processing may be a type of "manufacturing," statute's use of separate term "processing" indicated that legislature "understood and intended that 'processing' includes matters outside the confines of 'manufacturing'").  There is no support, however, in either the statute's text or the common meaning of the term "meal" to indicate that it includes more than food items.  The dictionary definitions provide that "meal" is a category of food; that is, food eaten in one sitting.[4]  The two terms mean different things, and neither of them includes items that are not food.  Cheddar's assertion that the term "meal" includes smallwares seems to derive from the statute's use of the terms "furnish" and "service" in its definition of a sale as "the *furnishing*, preparation, or *service* of food, meals, or drinks."  We understand Cheddar's to argue that use of the terms "furnish" and "service" indicates that the smallwares fall within the scope of the term "meal" because the meal could not be "furnished" or "served" without the smallwares. We are unpersuaded by this argument for two reasons.  First, the terms "furnishing" and "service of" refer to both "food" and "meals," which undercuts Cheddar's assertion that the difference between a "meal" and "food" is that meal includes serving utensils while food does not.  Second, the statute defines "sale for resale" as a sale of tangible personal property to a purchaser who acquires it for the purpose of reselling it.  *See* Tex. Tax Code § 151.006(a)(1).  In the context of the sale-for-resale exemption, it is plain that the qualifying tangible personal property is the food,

_____

[4]  In fact, in its appellate briefing, Cheddar's states:  "The feature that distinguishes a meal from simply food is that *a meal is food served and eaten in one sitting."*  (Emphasis added).

10

meals, or drinks, and the "furnishing, preparation, and service" of that tangible personal property is the qualifying resale. *See First Nat'l Bank of Fort Worth v. Bullock*, 584 S.W.2d 548, 551 (Tex. App.—Austin 1979, writ ref'd n.r.e.) ("[T]he tangible personal property consist[s] of food, meals and drink, the sale of which consist[s] of the furnishing, preparation, and serving of those items for consideration."). Having rejected Cheddar's interpretation of the term "meals" in the statute to include the smallwares, we conclude that its furnishing of meals to dine-in customers did not constitute a "sale" of the smallwares within the scope of the sale-for-resale exemption.

***Is Comptroller rule 3.293(h)(5) a facially valid rule?***

Section 2001.038 of the Texas Government Code allows a party to challenge the validity of an agency rule through a declaratory judgment action if it is alleged that the rule or its threatened application interferes with or impairs a legal right or privilege of the plaintiff. *See Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2007, no pet.). We presume that an agency rule is valid, and the party challenging the rule has the burden of demonstrating its invalidity. *See Texas Ass'n of Psych. Assocs. v. Texas State Bd. of Exam'rs of Psychs.*, 439 S.W.3d 597, 603 (Tex. App.—Austin 2014, no pet.). To establish a rule's facial invalidity, the challenger must show that the rule (1) contravenes specific statutory language; (2) is counter to the statute's general objectives; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Harlingen Family Dentistry, P.C. v. Texas Health & Hum. Servs. Comm'n*, 452 S.W.3d 479, 481 (Tex. App.—Austin 2014, pet. dism'd).

11

Cheddar's challenges Comptroller rule 3.293(h)(5), alleging that it improperly limits the type of tangible personal property or taxable item that can qualify for the sale-for-resale exemption. The challenged rule provides, in pertinent part:

> (h) Responsibilities of sellers of taxable food and beverages.
>
> > (5) A seller may give a resale certificate to a supplier for the tax-free purchase of items that are transferred to the customer with the food or beverages. Such items must not be reusable by the seller to qualify for the sale for resale exemption. [] Examples of items qualifying for the exemption include disposable paper products, wooden, plastic, and aluminum products that are transferred to the customer. Other examples include cake boxes, lunch boxes, disposable cups, paper and plastic containers, bottle wraps, butter chip trays, disposable paper or plastic plates, plastic knives, forks, and spoons, paper napkins, soda straws, toothpicks, french fry boxes, stir sticks, ice cream sticks, disposable souffle cups, hot dog trays, and other types of disposable trays.

34 Tex. Admin. Code § 3.293(h)(5). Cheddar's first asserts that the rule is counter to the general objective of the sale-for-resale exemption, which is to make sure that "the same goods are not twice subject to *sales tax*, such that 'only the ultimate owner of the goods should be burdened by the sales tax.'" *DTWC Corp.*, 400 S.W.3d at 153; *Clearview Cable TV*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied) ("Retailers are allowed to purchase goods tax-free from wholesalers because the Tax Code recognizes that the consumer will ultimately *own and pay sales tax* on the goods purchased from the retailers."); *see 7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 684 (Tex. App.—Austin 2010, pet. denied) (noting that "purpose of the sale-for-resale exemption is to prevent double taxation"). The sale-for-resale exemption achieves this objective by exempting from sales tax the sale of tangible personal property by one entity, for example a wholesaler, to another entity that acquires the property for the purpose of reselling it, for example a retailer. *See Clearview Cable TV*, 960 S.W.2d at 426 ("The application of the

12

exemption is best exemplified by the transfer or sale of merchandise from wholesaler to retailer to consumer. Retailers are allowed to purchase goods tax-free from wholesalers because the Tax Code recognizes that the customer will ultimately *own and pay sales tax* on the goods purchased from the retailers."). The sales tax is collected from the ultimate consumer; i.e., the entity that purchases the good from the retailer. *Id.* ("In other words, the Tax Code recognizes that the same goods should not be taxed twice; only the ultimate owner of the goods should be burdened by the sales tax.").

Cheddar's asserts that the rule is counter to the statute's objective of avoiding double taxation because it precludes a restaurant from claiming the sale-for-resale exemption on "reusable" items like the smallwares. Cheddar's argues that the dine-in customers are the "ultimate consumers" because they "use the smallwares to enjoy their order." Cheddar's maintains that because the rule requires Cheddar's, who it contends is not the "ultimate consumer" of the smallwares, to pay sales and use tax when it purchases the smallwares, the rule interferes with the statutory objective of taxing only the "ultimate consumer" of the smallwares. This Court has previously stated that the objective of the sale-for-resale exemption is to impose sales and use tax only on the "*ultimate owner* of the goods." *See, e.g.*, *DTWC Corp.*, 400 S.W.3d at 153 (emphasis added). As explained above, although Cheddar's provided its dine-in customers access to and use of the smallwares, it did not transfer ownership or possession of them to the dine-in customers. In fact, customers who took the smallwares with them after eating their meal were considered to have stolen them. We reject Cheddar's contention that the rule's effect of precluding Cheddar's from claiming the sale-for-resale exemption for the smallwares is counter to the statute's objective of taxing only the ultimate owner of the smallwares.

13

Cheddar's next argues that the word "transferred" in the rule causes it to contradict or impose additional burdens, conditions, or restrictions on the definitions of "sale" and "sale for resale" in Tax Code subsection 151.005(6). According to Cheddar's, because the Tax Code recognizes that a "sale" can mean "the furnishing, preparation, or service of food, meals, or drinks," the rule's requirement that the tax-exempt items—here, the smallwares—be "transferred to the customer with the food or beverages" imposes a transfer requirement not found in subsection 151.005(6). Put differently, Cheddar's argues that there is no requirement that the smallwares be "transferred" to the dine-in customer in order for them to be sold since a sale is defined as the "furnishing" or "service" of "meals," which include the smallwares. We have previously rejected Cheddar's contention that the smallwares are part of the "meal" such that merely furnishing or serving a "meal" constitutes a sale of the smallwares. Thus, the rule's requirement that the smallwares be "transferred" to the dine-in customers with the food or beverages sold does not impose additional burdens, conditions, or restrictions on the definition of "sale" found in subsection 151.005(6).

Next, Cheddar's argues that the rule's use of the words "are transferred" requires, because it is in the past tense, that the smallwares have already been transferred to the dine-in customers before they are entitled to the exemption, whereas the statute provides that tangible personal property, like the smallwares, are tax-exempt at the time they are "acquired for the purpose of reselling" them. *See* Tex. Tax Code § 151.006(a)(1). Cheddar's claims that the rule thereby "presents timing inconsistencies" in the availability of the sales tax exemption. Specifically, the statute contemplates that the sale-for-resale exemption applies at the moment the qualifying tangible personal property is acquired, regardless of what is actually done with it, whereas Cheddar's interprets the rule as requiring that the tangible personal property actually

14

have been transferred before it qualifies for the exemption—an imposition of a "requirement on its future use." We disagree that the use of the words "are transferred" in the rule creates a timing inconsistency that places limitations not present in subsection 151.006(a)(1) on future use of exempt tangible personal property. The rule states, in pertinent part, that "[a] seller may give a resale certificate to a supplier for the tax-free purchase of items that are transferred to the customer with the food and beverage." 34 Tex. Admin. Code § 3.293(h)(5). The phrase "that are transferred to the customer" modifies the term "item" and means simply that the certificate may be presented *if* the purchaser acquired the property intending to transfer it to a customer, not *when* the item is actually transferred to the customer. This is wholly consistent with subsection 151.006(a)(1), which provides that a "sale for resale" occurs if the purchaser acquires the tangible personal property for the purpose of reselling it in the normal course of business. Tex. Tax Code § 151.006(a)(1). The words "are transferred" in the rule create no timing inconsistencies or future use conditions beyond those existing in the statute.

Finally, Cheddar's argues that the word "reusable" in the rule renders the rule invalid because it causes the rule to contradict or impose additional burdens, conditions, or restrictions on the language in the Tax Code. The rule provides that the seller may give a resale certificate to a supplier for the tax-free purchase of items that are transferred to the customer with the food or beverages only if the item is not reusable by the seller of the food or beverage. *See* 34 Tex. Admin. Code § 3.293(h)(5). Cheddar's asserts that by requiring that tangible personal property not be "reusable" in order to qualify for the sale-for-resale exemption, the rule places limitations on what tangible personal property can fall within the exemption that are not present in the statute. Correlatively, Cheddar's contends that because, in its view, the rule operates to exclude reusable items from the sale-for-resale exemption, it contradicts the statute's objective of

15

avoiding double taxation on *all* tangible personal property acquired for the purpose of reselling it, not just non-reusable items. Cheddar's argument focuses solely on the term "reusable" in the statute and ignores the words that follow—"by the seller." The rule disqualifies an item from the sale-for-resale exemption only if it is "reusable by the seller," not simply if it is a reusable item. Rather than limit the types of tangible personal property that are exempt when transferred to the customer with the food or beverages, the rule ensures that "reusable" items, like glasses, mugs, or plates qualify for the exemption when they are transferred to the customer and therefore cannot be reused by the seller. An example is a souvenir glass embossed with a restaurant's logo and containing the restaurant's signature drink, which the customer is permitted, and in fact expected, to take with them from the restaurant. The rule ensures that this type of reusable item qualifies for the exemption even though it is not the typical disposable plate, plasticware, or napkin that typically is transferred to a customer with food or beverages. The rule therefore confirms, and is consistent with, the statutory intent that an item, whether reusable or non-reusable, qualifies for the exemption if it is transferred to the customer, rather than remaining available for reuse by the seller of the food or beverages.

Because Cheddar's has failed to demonstrate that Comptroller rule 3.293(h)(5) either (1) contravenes specific statutory language; (2) is counter to the statute's general objectives; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions, it has failed to carry its burden of establishing the rule's facial invalidity. *See Harlingen Family Dentistry, P.C.*, 452 S.W.3d at 481; *Texas Ass'n of Psych.*

16

*Assocs.*, 439 S.W.3d at 603. We conclude that the trial court did not err in denying Cheddar's challenge to this rule.[5]

## CONCLUSION

For the reasons stated in this opinion, Cheddar's purchase of the smallwares at issue in this case did not qualify for the sale-for-resale exemption. Consequently, the trial court did not err in determining that Cheddar's was not entitled to a sales tax refund and rendering judgment that Cheddar's take nothing. Because Cheddar's failed to establish that Comptroller rule 3.293(h)(5) is facially invalid, the trial court correctly denied Cheddar's rule challenge. We overrule Cheddar's appellate issues and affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: April 7, 2022

---

[5] Because our holdings are based on the application of the law to unchallenged findings of fact and do not depend on fact findings that were challenged on appeal, we need not address Cheddar's evidentiary challenges to those facts that were not considered as part our analysis. *See* Tex. R. App. P. 47.1.

17